CAREY BAGNELL AND THE EXECUTORS OF MORGAN BYRNE, PLAIN-
TIFFS IN ERROR, vs. GEORGE W. BRODERICK, DEFENDANT IN
ERROR.

The plaintiff in error had exhibited, in an action instituted against him in the Circuit Court
of Missouri, evidence conducing to prove that a patent from the United States, under which
the plaintiff in the ejectment, the defendant in error, claimed the land, had been im-
properly granted by the government of the United States, and that the title to the land
was in him. Held, that in an action at law the patent from the United States for part of
the public lands is conclusive. If those who claim to hold the land against the patent can
show that it issued by mistake, then the equity side of the Circuit Court is the proper
forum; and a bill in Chancery is the proper remedy to investigate the equities of the parties.
Congress has the sole power to declare the dignity and effect of titles emanating from the
United States; and the whole legislation of the government in reference to the public
lands declares the patent to be the superior and conclusive evidence of legal title. Until
it issues the fee is in the government; which by the patent passes to the grantee, and he
is entitled to recover the possession in ejectment.
The practice of giving in evidence a special entry in aid of a patent, and dating the legal
title from the date of the entry, is familiar in some of the states, and especially in Ten-
nessee. Yet the entry can only come in aid of the legal title, and is no evidence of such
title standing alone, when opposed to a patent for the same land.
The presumption is that the judgment of the Circuit Court is proper, and it lies on the
plaintiff in error to show the contrary.
When the title to the public land has passed out of the United States by conflicting
patents, there can be no objection to the practice adopted by the Courts of a state to
give effect to the better right, in any form of remedy the legislature or Courts of the
state may prescribe.
No doubt is entertained of the power of the states to pass laws authorizing purchasers
of lands from the United States to prosecute actions of ejectment upon certificates of
purchase, against trespassers on the lands purchased; but it is denied that the states have
any power to declare certificates of purchase of equal dignity with a patent. Congress
alone can give them such effect.

IN error to the Circuit Court of the United States for the District
of Missouri.

This was an action of ejectment for a tract of land in the state of
Missouri, instituted by George W. Broderick against Bagnell, the
defendant, the tenant in possession; and in the progress of the
cause, Morgan Byrne, the landlord, was made co-defendant, and he
dying, his executors were substituted.

Other actions of ejectment were at the same time instituted by
George W. Broderick, for parts of the said tract in the possession of
McCunie, and of Sampson; and the executors of Morgan Byrne
became in the same manner co-defendants in the cases. A verdict, in
conformity to the opinion of the Circuit Court, having been given
for the plaintiff in each of the cases, on the 10th of April, 1838, the
defendants prosecuted writs of error to the Supreme Court; bills of
exceptions having been sealed by the Court.

The bills of exceptions show that on the trial of these cases the
plaintiff below read in evidence a copy of the patent from the
United States to John Robertson, Jr. dated 17th June, 1820, for the
tract of land mentioned in the above statements, which, reciting that

John Robertson, Jr. had deposited in the general land office a certificate, numbered 192, of the recorder of land titles at St. Louis, Missouri; whereby it appeared that in pursuance of an act of Congress passed 17th February, 1815, entitled, "An act for the relief of the inhabitants of the late county of New Madrid, in the Missouri territory, who suffered by earthquakes," the said John Robertson, Jr. was confirmed in his claim for 640 acres of land, being survey No. 2810, and section 32, township 50 north, and range 15 west of 5th principal meridian ; and the United States granted to John Robertson, Jr. in fee, the tract of land described above. Also a deed from John Robertson, Jr. to Augustus H. Evans, dated 16th November, 1830, conveying the same tract of land to the said Evans in fee, expressly stipulating, however, against any warranty. Also a deed from Augustus H. Evans to George W. Broderick, the plaintiff below, now defendant in error, dated 7th June, 1830, conveying the same tract of land to the said Broderick in fee, and proved possession of the premises by the defendants below; at the commencement of the suits respectively, and here closed his testimony.

That the defendants below, now plaintiffs in error, read in evidence a transcript of a notice to the recorder of land titles for the United States at St. Louis, taken from the records of the office of the recorder, given by John Robertson, Jr., which states that he claims 750 arpens of land in the Big Prairie, on the ground of inhabitation and cultivation, prior to and on 20th December, 1803, by and with the consent of the proper Spanish officer.

Also a copy of proceedings had before the board of commissioners on land claims, on the 11th July, 1811, taken from the minutes of the proceedings of the board for ascertaining and adjusting the titles and claims to lands, which shows that on the claim of John Robertson, Jr. for 750 arpens of land in the Big Prairie, the board granted to John Robertson, Jr. 200 arpens of land. Also a transcript of opinion, and report of the recorder of land titles of the United States at St. Louis, made 1st November, 1815, which, in connexion with act of Congress of 29th April, 1816, entitled, "An act for the confirmation of certain claims of land in the western district of the state of Louisiana, and in the territory of Missouri," (see sec. 2 of this act,) shows that the confirmation of 200 arpens, parcel of the claim of John Robertson, Jr. for 750 arpens of land in the Big Prairie, made by the board of Commissioners aforesaid, was extended to 640 acres, and this quantity, 640 acres, was accordingly confirmed to him. Also a deed from John Robertson, Jr. to Edward Robertson, Sr. dated 29th May, 1809, conveying the said 750 arpens of land to the said Edward Robertson, Sr. in fee ; reciting in same conveyance that 330 arpens of the said 750 arpens had been surveyed, and how ; and specifying the manner of laying off the residue, and authorizing the said Edward Robertson to apply for and receive from government or the proper authorities, a patent in his own name for same ; and covenanting on behalf of himself and his heirs, to warrant the title

2 o 2

against all persons claiming under, through, or by the vendor. Also a deed from Edward Robertson, Sr. to Morgan Byrne, dated 30th October, 1813, conveying to the said Byrne, in fee, 300 arpens of land out of a tract of land the head right of John Robertson, Jr. situated and being in the Big Prairie, bounding the part conveyed, parcel of the 750 arpens above described; and covenanting for himself and his heirs to warrant and defend the title against all claims whatever. Also a deed from Edward Robertson, Sr. to Morgan Byrne, dated 11th September, 1816, conveying to the said Byrne in fee 250 arpens of land, part of the head right of John Robertson, Jr. of 750 arpens, situated in the Big Prairie, and containing a covenant for himself and heirs, to warrant the title against all claims whatever. Also a copy of deed from Edward Robertson, Sr. to William Shelby, dated 29th October, 1816, conveying to the said Shelby in fee two hundred arpens of land bounding the same, parcel of the head right of John Robertson, Jr., (and parcel of the 750 arpens above described,) and containing a covenant of general warranty. Also a copy of deed from William Shelby to Levi Grimes, dated 2d December, 1816, conveying to the said Grimes in fee the 200 arpens of land next above described, and containing a covenant of general warranty.

Also a deed from Levi Grimes to Morgan Byrne, dated 26th February, 1817, conveying to the said Byrne in fee the 200 arpens of land next above described, and containing a special warranty.

The defendants also produced in evidence an extract from registry of relinquishments, in office of recorder of land titles for the United States at St. Louis, of lands materially injured by earthquakes, under the act of Congress of 17th February, 1815; which shows that the confirmation aforesaid to John Robertson, Jr. for 640 acres, situated in the Big Prairie, was relinquished by Morgan Byrne, as the legal representative of John Robertson, Jr., and on such relinquishment the location certificate No. 448 issued.

Also a copy of certificate of location, dated September, 1818, and numbered 448, issued by recorder of land titles of United States at St. Louis, which certifies that a tract of 640 acres of land situated in the Big Prairie was materially injured by earthquakes, and that in conformity with the provisions of the act of Congress of 17th February, 1815, the said John Robertson, Jr., (reciting that he appears from the books of his office, recorder of land titles of United States, to be the owner,) or his legal representatives, was entitled to locate 640 acres of land on any of the public lands, &c. Also a copy of the location under the foregoing certificate of location, made 8th October, 1818, which shows that Morgan Byrne, as the legal representative of John Robertson, Jr., entered and located 640 acres of land, by virtue of the certificate of location, commonly called a New Madrid certificate, issued by the recorder of land titles of the United States at St. Louis, dated September, 1818, and numbered 448, so as to include section No. 32, township 50 north, range 15 west of

[Bagnell et al. vs. Broderick.]

5th principal meridian, (the same premises in dispute;) and here the defendants below closed their testimony.

The plaintiff below then read in evidence, a copy of notice by John Robertson, Jr., of claim for 330 arpens, and proceedings on same had before the board of commissioners of land claims, on 24th March, 1806, and 15th August, 1811, which show that John Robertson, Jr. filed a notice of claim for 330 arpens, situated in the district of New Madrid, under the second section of the act of Congress of March, 1805, accompanied by a plat of survey of 330 arpens, made by one Joseph Story, at request of John Robertson, Jr., (as the same purports,) who, as the survey recites, claimed the same as part of his settlement right, by virtue of the second section of the act of Congress, of March, 1805; that the board of commissioners on the 24th March, 1806, grant to claimant 750 arpens, and on the 15th August, 1811, reject the claim entirely, saying the claim ought not to be granted. Also, a transcript of opinion, and report of the recorder of land titles of United States, at St. Louis, made 1st November, 1815, which, in connexion with the act of Congress of 29th April, 1816, before referred to, shows that the claim of John Robertson, for 330 arpens, was confirmed to him, and 330 arpens accordingly granted. Also, a copy of certificate of location in favour of John Robertson, Jr. or his legal representatives, dated 18th September, 1818, and numbered 447, issued by the recorder of land titles of the United States, at St. Louis, which certifies that a tract of 330 arpens of land situated on lake St. Marie, had been materially injured by earthquakes, and that in conformity with the provisions of the act of Congress, of 17th February, 1815, the said John Robertson, Jr., reciting that he appears from the books of his office, recorder of land titles of the United States, to be the owner, or his legal representatives, was entitled to locate 330 arpens of land, &c.

The defendants below then read in evidence, an extract from registry of relinquishments, in the office of recorder of land titles of the United States, at St. Louis, of lands materially injured by earthquakes, under the act of Congress of 17th February, 1815, which shows that the confirmation aforesaid, of 330 arpens to John Robertson, Jr., was relinquished by James Tanner, as his legal representative, and that on such relinquishment the location certificate, No. 447, issued. Also, a certificate of the recorder of land titles aforesaid, that from entries made in the books of his office of New Madrid location certificates issued, the certificate of location No. 447, was delivered to one Jacoby, for James Tanner, and certificate of location No. 448, was delivered to Morgan Byrne; and proved that the premises in dispute in each case, was of the value of three thousand dollars: which closed and was all the evidence given in the causes.

Upon the case made, the defendants below moved the Court to instruct the jury as follows:

1. That the entry or New Madrid location, made by Morgan

Byrne in his own name, as given in evidence in these cases, is proof of legal title to the land; and is a sufficient defence against all persons who do not show a better legal title to the same land.

2. That the patent, a copy of which has been given in evidence by the plaintiff, did not vest in the patentee any better legal right to the land in question than he had before the date thereof, as against the defendants claiming the same land adversely by other title.

3. That after the entry and before the patent, Morgan Byrne had a legal title to the land in question, sufficient to enable him to prosecute or defend an action of ejectment therefor: And that the issuing of the patent could not divest that title.

4. That if the jury believe the patent, a copy of which has been offered in evidence by the plaintiff, issued on the location made by Morgan Byrne, and shown in evidence on the part of the defendants in these cases; the patent is not such title as will avail against the location.

All which instructions the Court refused: to which refusal exceptions were taken.

Mr. Beverly Allen submitted a printed argument for the plaintiffs in error.

The errors assigned are, besides the general assignment, four; answering respectively to the refusal of the Court to give the four instructions prayed: and a fifth, that the judgment against the executors of Byrne, was de bonis propriis, whereas, it should have been de bonis testatoris.

It appears from the testimony in the three cases, that Morgan Byrne, the landlord and testator was the owner of the land in New Madrid, which was injured by earthquakes; that he applied for and obtained the certificate of location No. 448, relinquishing his land in New Madrid, in lieu of which this certificate issued by the United States, and was located in his own name on the tract of land in dispute, in virtue of certificate No. 448; that upon his location, a patent certificate issued, and on this certificate a patent issued to John Robertson, Jr.; the same person who once owned the land in New Madrid, relinquished by Byrne and under whom Byrne claimed that land. That the plaintiff derives title to the land in dispute, from John Robertson, Jr., by deeds executed since the issue of the patent; and being such owner, instituted these actions of ejectment to recover the possession of the land located as aforesaid by Byrne.

The question is, whether in such a case and on such a statement of facts, John Robertson, Jr. the patentee, or George W. Broderick, his assignee, can recover against Morgan Byrne, the locator of the land, or his representatives. The plaintiffs in error, contend that the patentee and his assignee cannot; and rely on the following grounds:

1. The title of Morgan Byrne was sufficient to maintain an ac-

[Bagnell et al. vs. Broderick.]

tion of ejectment. See Revised Code of Missouri, of 1825, page 343, sec. 2d, in force, at commencement of these suits.* And Revised Code of Missouri, of 1835, page 234, 235, sec. 1, 2, and 9, in force at trial of same.†

2. That whatever was sufficient to maintain, must be sufficient to defend an action of ejectment. This is a corollary from the first ground. If these two points are well taken, the first special error is well assigned.

3. That the patent is not, in this case, and on this statement of facts, the "better title" contemplated by the acts of assembly referred to.

As to the first point, argument cannot elucidate the words of the law. Its meaning is evident, and the first rule of construction is not to construe that which needs no construction.

As to the second point. The correctness of this is necessarily implied in the language and spirit of the law. It is a sequence from the first. If the title of Byrne was such as would enable him to maintain an action of ejectment and recover possession, it would be

* "Sec. 2. Be it further enacted, that any person claiming lands or tenements, by virtue of any pre-emption right, New Madrid location, entry with the register and receiver, confirmation by the board of commissioners of land claims, for the territory of Missouri, or by the recorder of land titles, or by concession not exceeding one league square, or by settlement right, or other right, where such right or concession has been confirmed by the commissioners aforesaid, or recorder aforesaid, or by any act of Congress: or where the same is held by deed, patent, entry, warrant, or survey, being confirmed as aforesaid; or by any French or Spanish grant, warrant, or order of survey, which prior to the tenth day of March, one thousand eight hundred and four, had been surveyed by proper authority, under the French or Spanish governments, and recorded according to the custom and usages of the country, although such person may not be in the actual possession; or if the same shall have been actually surveyed, by authority of the United States, since the tenth day of March, one thousand eight hundred and four, or by any proper officer, under the French or Spanish governments, prior to the said tenth day of March, one thousand eight hundred and four, such person shall and may maintain actions of ejectment or trespass, in any Court having jurisdiction thereof, against any person not having a better title: and in all actions of ejectment, where a verdict shall be found for the plaintiff, the jury shall also find damages for the mesne profits, up to the time of rendering the verdict: Provided, however, That mesne profits, shall not be recovered for any time prior to the commencement of the suit, unless the plaintiff shall prove that the defendant had knowledge of his claim; and then only from the time of such knowledge coming from the defendant."

† "Sec. 1. The action of ejectment may be maintained in all cases when the plaintiff is legally entitled to the possession of the premises.

"Sec. 2. The action of ejectment may also be maintained in all cases where the plaintiff claims possession of the premises, against any person not having a better title thereto, under or by virtue of,

*First*, An entry with the register and receiver of any land office of the United States, or with the commissioner of the general land office thereof; or,

*Second*, A pre-emption right under the laws of the United States; or,

*Third*, A New Madrid location; or,

*Fourth*, A confirmation made under the laws of the United States; or,

*Fifth*, A French or Spanish grant, warrant, or order of survey, surveyed by proper authority under the French or Spanish governments, and recorded according to the usages of the country, prior to the tenth day of March, eighteen hundred and four."

"Sec. 9. To entitle the plaintiff to recover, it shall be sufficient for him to show, that, at the time of the commencement of the action the defendant was in possession of the premises claimed, and that the plaintiff had such right to the possession thereof, as is declared by this act to be sufficient to maintain the action."

absurd not to hold it to be sufficient to maintain that possession wher recovered.

As to the third point. Here the inquiry arises what is the meaning of the phrase "better title" in the acts of assembly referred to. A title is thus defined by Lord Coke, 1 Inst. 345: "Titulus est justa causa possidendi id quoc nostrum est." Or by Blackstone, Black. Com. vol. ii. p. 195: "It is the means whereby the owner of lands hath the just possession of his property." What this "justa causa" or "means" is, must, in all countries, depend on the law of the country where the subject of the title is situated. United States *vs.* Crosby, 7 Cranch, 115. Clark *vs.* Graham, 6 Wheat. 567. Kerr *vs.* Devisees of Moon, 9 Wheat. 565. M'Cormick et al. *vs.* Sullivan et al. 10 Wheat. 192. The "justa causa" or "means" is nothing more than those indicia of ownership which are recognised by the laws of the country as evidence of right. Title is by descent or purchase. The indicia of the former is heirship, of the latter any of those modes of acquiring property which are recognised by law. The laws of Missouri, where lies the property in dispute, recognise the entry or location of land, as in this case, to be a mode of acquiring property, and an evidence of right in the locator They also recognise a patent to be a mode of acquiring property, and an evidence of right. We have then an indicium of ownership in Morgan Byrne, and an indicium of ownership in John Robertson, Jr.: and these indicia of ownership are considered by the laws of Missouri such evidence of right as will enable either to maintain or defend an action of ejectment. Morgan Byrne had, in this case, the possession, the right of possession, and the right of property, which together constitute a completely good title, denominated a double right "jus duplicatum," or "droit droit." Black. Com. vol. ii. p. 199. In him was the "juris et seisina conjunctio" which constitute the title completely legal, or a perfect title. Kent's Com. Lec. 65.

It may be admitted that a patent is considered in law a higher species of evidence of right, but that can avail nothing in this case, where the evidence of right in the other party is sufficient to maintain or defend the action of ejectment. The words of the law are not "against any person not having a title thereto, proved by a higher species of evidence," but "against any person not having a better title thereto;" that is, an indicium of ownership, recognised by the law as evidence of a better right. It then necessarily follows, that in the construction of the words "better title" we must look not at the species of evidence of the title, but to the justness of the title.

On looking into the titles of these two contending claimants, the patentee and the locator, we find they both have the same origin: they both originate in the relinquishment made by Morgan Byrne and the certificate of location No. 448; and now, which of the two has the better title, or more just title to the land located under the certificate, Morgan Byrne, whose land was relinquished, or John Robertson, Jr. who had no interest in the land relinquished; Byrne,

who was interested in and made the location, or Robertson, Jr., who had no interest therein, was no party to it, and who had previously sold and conveyed to him, under whom Byrne claimed the land thus relinquished, and in virtue of which relinquishment Byrne made that location? Seeing then both to have those evidences of right recognised by the law to be sufficient to maintain or defend an ejectment, the justness of the title of Robertson, Jr., must be examined. On this examination it will be found that Robertson, Jr., shows no title better than Byrne's; and failing in this, Broderick, the assignee of Robertson, Jr., cannot recover against the tenant and representatives of Byrne.

There has been no adjudication by the Supreme Court of Missouri, what is meant by the words "better title." In the case of the administrators of Janis *vs.* Guerno, 4 Miss. Rep. 458, the Court says, "what shall be considered a better title, the act does not define. It surely does not mean that the bare possession of the defendant shall be so considered. We understand then that the meaning of the act is, that when the plaintiff produces a confirmation of the land to himself, he has made out his case, and will be entitled to recover unless the defendant can show a better title. What in all cases, or indeed what would be a better title in any case, need not be now decided."

Titles are legal or equitable, predicated on that distinction known in many of the states of the Union between law and equity. The former are subjects of examination in Courts of law, and the latter in Courts of equity. In those states, of which Missouri is one, legal titles are the subject of examination in Courts of law, equitable in Courts of equity, whether a title be legal or equitable; that is, whether it be the subject of examination in a Court of law or equity: the foundation of a proceeding in one Court or the other depends on the statute of the state where the tribunal is situated in which the examination or proceeding is had. Robinson *vs.* Campbell, 3 Wheat. 212. Society for the propagation of the gospel *vs.* Wheeler et al. 2 Gallis. 105. In Missouri the title of Morgan Byrne is the subject of examination, and the foundation of a proceeding in a Court of law. It is a title on which an ejectment, which by the law of Missouri is a legal proceeding, may be maintained or defended, and is therefore a legal title, and will be so considered in the Courts of the United States, conformably to the decision in Robinson *vs.* Campbell, 3 Wheat. 212. There is then before the Court in these cases a legal title in both plaintiffs and defendant in error, and the inquiry again recurs which has the better title; not which has the higher species of evidence of title, but which in point of justness of superior right should prevail. What has already been said shows that Byrne, who owned the land in New Madrid, relinquished the same to the United States and made the location, has a more just and superior right, in other words, a better title, to the land located than John Robertson, Jr., original owner of the land in New Madrid, who sold the same to Edward Robertson, Sr., under whom Byrne claimed

the same, who had no agency in the relinquishment, no interest in the land relinquished, and no right to the land located by Byrne anterior to the issuing of the patent. In other words, by Byrne's act the land in dispute was severed from the domain of the United States, and by him appropriated with the consent of the United States, by him purchased for a good and valuable consideration from the United States, by him acquired in an exchange with the United States. He gave other lands for it to the United States. From the moment of the location it became his—the United States had no title to it at the date of the patent. See act of Congress, 17 Feb. 1815, sec. 2, proviso 2. The title was in Byrne, and that title was such as enabled Byrne to institute in the Courts of law of Missouri an action of ejectment; and it is submitted, whether under these circumstances it can be said that the title of John Robertson, Jr., is better than the title of Morgan Byrne: whether a patent issuing from the United States to John Robertson, Jr., for land they had previously disposed of, can prevail against Byrne, to whom it was so disposed, and this disposition being recognised by the laws of Missouri as a title on which to maintain an ejectment. Our statute requires that in actions of ejectment an examination be made into the successive gradations of title, or the various evidences of title to land in a contest between two persons claiming the same land, whenever those gradations or evidences are recognised by the law as legal titles, or titles on which an ejectment may be maintained or defended. This is all that is insisted on in these cases. It is not asked to maintain or defend an ejectment on an equitable title, nor to look behind the patent as to the regularity of the steps from the first to the last ending with the issue of the patent; but to ascertain who had the prior legal right, that right on which an ejectment might be maintained or defended. The plaintiffs in error feel confident that on such examination their right will be found to be a legal and prior right; being legal, it is examinable in a Court of law, is the foundation of a legal proceeding, is sufficient to maintain or defend an action of ejectment; and, being prior in time, is more powerful in law and right, and must prevail against the right of the defendant in error, which, though legal, is posterior in time. But if it should be said that the patent is the legal title, and the location an equitable title, yet the statute of Missouri making this equitable title examinable in a Court of Law, and giving it that dignity which authorizes an action of ejectment to be maintained or defended on it, the Courts of the United States are bound to give it the same dignity; and when they find it possessing the effect ascribed to it by the laws of Missouri, to give to it the like preference over the patent in this case, that the Courts of Tennessee and the Supreme Court of the United States, following those Courts, give to the junior patent founded on an elder entry over an elder patent founded on a junior entry. Polk's lessee *vs.* Wendall, 9 Cranch, 87.

The decision of the Supreme Court of the United States that a patent is a title from its date, and conclusive against all those whose

rights do not commence previous to its emanation, 7 Wheat. 212, implies that there may be rights commencing anterior to the patent. Is there a right, in these cases, commencing anterior to the date of the patent? The location was anterior, and gives a right. Is this anterior right examinable in a Court of law? The statute of Missouri makes it so examinable; and being so, whenever a contest arises between a patent and an anterior location, this location, whether a legal or an equitable right, must in the construction of the statute of Missouri, have its effect; and, if of a merit superior to the patent, have the same effect it would have in a Court of equity and prevail over the patent. Finley vs. Williams et al., 9 Cranch, 164. McArthur vs. Browder, 4 Wheat. 488.

If the preceding views be correct, the general and first four special errors are well assigned.

As to the fifth special error. There is no such thing known to the law or in the practice of the law in the Courts of Missouri, as those pleas peculiar to an executor or administrator growing out of the matter of assets. In Missouri no execution issues against an executor or administrator sued as such, unless specially sued for a devastavit, or on his bond as such. All demands, no matter of what dignity, are presented to the Court having cognizance over the administration of estates, by whom they are classed; and at the annual settlements of the administrators or executors, that portion of the assets which consists of money, is apportioned among the creditors: and thus and not otherwise are demands, whether by simple contract, by specialty or by judgment, against an estate collected. For all defaults on the part of an executor or administrator, a suggestion of a devastavit is made and tried in the Court having cognizance of the administration of estates, or the bond of the executor or administrator is put in suit. Judgments predicated on the false pleading of the executor or administrator, as technically understood in the laws of England, are unknown to the law or in its practice in Missouri. See Revised Code of Missouri of 1835, title Administration.

Coxe for the defendant in error.—

The decision of the Circuit Court is to be considered correct, until its incorrectness is made to appear. This was so held by this Court in the case of Carroll vs. Peake, 1 Peters, 23. Have the plaintiffs in error shown that there was error in the decision of the Circuit Court? It was a question on the legal title of the parties in the cause, and this question alone was decided by the Court. The equitable claims of those who alleged they were justly entitled to the land under Robertson, could not be taken into consideration in the action on the law side of the Circuit Court. The chancery powers of the Court could have been invoked by the defendants in another form than in a defence to an action of ejectment.

The grant and patent are evidence in a Court of law of the matters recited in them. The grant, legally and fully executed, was

competent evidence of the matters set forth in it; and as none other was necessary, it was in effect conclusive." The United States *vs.* Arredondo et al., 6 Peters, 724. No facts behind the grant can be investigated. 11 Wheat. 580. A patent is evidence in a Court of law of the regularity of all the previous steps to it. 5 Wheat. 293. 7 Wheat. 151. The Court are bound to presume the acts of commissioners intrusted by laws of Congress to inquire into claims to lands, regular; and the decisions of these commissioners are in Courts of law binding and effectual. This principle was decided in the case of Ross *vs.* Barland, 1 Peters, 668.

The defendant in error supported his claim to the land by a patent issued by the proper authority. The patent was granted on the facts stated in the records of the land office, and those records are evidence of the proceedings stated in them. They are conclusive evidence. This was fully decided by this Court in the case of Galt *vs.* Galloway and others, 4 Peters, 342. This Court then said, "As the records of the land office are of great importance to the country, and are kept under the official sanction of the government, their contents must always be considered, and they are always received in Courts of justice, as evidence of the facts stated."

The commissioner of the land office was empowered by the act of Congress to investigate the facts connected with every application for land, in consequence of the injuries sustained by the earthquake; and he was to adjudge to the person entitled, after such investigation, the land to be granted by the United States. In this case, Robertson was in full life when the land was granted and patented to him; and he conveyed it to those under whom by regular conveyances the defendant in error holds. In a Court of law nothing more was necessary than the exhibition of such a legal title.

Nor could the plaintiffs in error derive any right to maintain their title under the provisions of the law of Missouri of 1835. That law can have no operation on the system established by the United States for the sale of their public lands, and the granting of titles thereto. Against trespassers, the law of Missouri may have full effect; and a holder of land in Missouri under a pre-emption right, New Madrid location, or entry with the register, might maintain an ejectment. But this law could give no right to an ejectment under an incohate right in the Courts of the United States, against a patent issued by the proper officer authorized by the act of Congress to grant a patent. The states of the United States cannot make by their statutes any titles or claims to lands by certificates of entry which are inferior to a patent, of equal-dignity with a patent.

Mr. Justice CATRON delivered the opinion of the Court.

This was an action of ejectment by Broderick against Bagnell, for a section of land lying in Howard county, Missouri; and Peter and Luke Byrne were admitted to come in and defend, under the following circumstances. Morgan Byrne claimed to be the owner of the land, and he was first admitted a co-defendant with Bagnell.

Byrne died, and Margaret Byrne, his executrix, was admitted as a co-defendant. Then she died; and Peter Byrne and Luke Byrne, executors of the last will of Morgan Byrne, were admitted.

The judgment below is, that the plaintiff recover the land and costs, against Carey Bagnell and P. and L. Byrne, executors of Morgan Byrne.

It is assigned for error, that the judgment for costs against Peter and Luke Byrne, should have been de bonis testatoris, and not de bonis propriis.

The presumption is, that the judgment of the Circuit Court is proper, and it lies on the plaintiffs in error to show the contrary. 1 Peters, 23. The executors of Morgan Byrne had no interest in the land by virtue of their letters testamentary, but could well have an interest by the will of their testator. On no other ground could they properly have been permitted to come in and defend in the character of executors. On this ground, therefore, we presume they were admitted; and, like other defendants in ejectment, having failed to show the better title, the recovery was proper; and costs necessarily followed the judgment de bonis propriis.

The plaintiff Broderick claimed by virtue of a patent from the United States, to John Robertson, Jr., dated June 17th, 1820; and deeds in due form from Robertson and others to himself, proved Carey in possession at the commencement of the suit; and here rested his case.

To show that the better title had been in Morgan Byrne, the defendants produced a deed dated 20th May, 1809, from John Robertson, Jr., to Edward Robertson, Sr., for seven hundred and fifty arpens of land lying in Big Prairie township, in the district of New Madrid, adjoining the lands of Sheckler and Cox; and which deed authorized Edward Robertson to procure a patent from the government. By different conveyances Morgan Byrne claimed title to the 750 arpens through and under Edward Robertson.

The land lies in the county of New Madrid, in the state of Missouri, and was injured by the earthquakes of December, 1811. To relieve the inhabitants who had suffered by this calamity, Congress passed the act of 17th February, 1815; providing that those whose lands had been materially injured, should be authorized to locate the same quantity on any of the public lands in the Missouri territory, but not exceeding in any case 640 acres; on which being done, the title to the land injured should revert to the United States.

The recorder of land titles for the territory of Missouri was made the judge, "to ascertain who was entitled to the benefit of the act, and to what extent;" on the examination of the evidences of claim; as compensation for which, if well founded, he was directed to issue a certificate to the claimant. This certificate having issued, and a notice of location having been filed in the surveyor general's office, on application of the claimant the surveyor was directed to survey the land selected, and to return a plat to the office of the recorder of land titles, together with a notice in writing, designating the tract

located, and the name of the claimant on whose behalf the location and survey had been made; which plat and notice it was the duty of the recorder to record in his office: and he was required to transmit a report of the claim as allowed, together with the location by survey to the commissioner of the general land office; and deliver to the claimant a certificate stating the circumstances of the case, and that he was entitled to a patent for the tract designated. The notice of location made by the claimant with the surveyor general is no part of the evidence on which the general land office acted; but the patent issued on the plat and certificate of the surveyor, returned to the recorder's office, and which was by him reported to the general land office.

The United States never deemed the land appropriated until the survey was returned, for the reason that there were many titles and claims, perfect and incipient, emanating from the provincial governments of France and Spain, and others from the United States, in the land district where the New Madrid claims were subject to be located. So there were lead mines and salt springs excluded from entry. Then, again, the notice of entry might be in a form inconsistent with the laws of the United States: in all which cases no survey could be made in conformity to it. If no such objection existed it was the duty of the surveyor to conform to the election made by the claimant, having the location certificate from the recorder. Still the only evidence of the location recognised by the government as an appropriation was the plat and certificate of the surveyor. Such is the information obtained from the general land office. As evidence of the form of location, and practice of the office, we have been furnished with a copy of the plat and certificates of survey on which the patent in this record is founded, and which is annexed. As before stated, the patent to John Robertson, Jr. is deemed to have been issued regularly; and we must presume that all the usual incipient steps had been taken before the title was perfected. 5 Wheat. 293. 7 Wheat. 157. 6 Peters, 724. 727, 728. 342. And of course, that the certificate of survey returned by the recorder, was in the name of John Robertson, Jr. The patent merged the location certificate on which the survey was founded; so that no second survey could be made by virtue of the certificate. Thus fortified stands the title of the plaintiff below.

The defendant there relied upon a notice of entry filed with the surveyor general in these words: " Morgan Byrne, as the legal representative of John Robertson, Jr., enters six hundred and forty acres of land, by virtue of a New Madrid certificate, issued by the recorder of land titles for the territory of Missouri, and dated St. Louis, September, 1818, and numbered 448, in the following manner, to wit, to include section No. 32, in township No. 50, north of the base line, range No. 15, west of the fifth principal meridian.

" *St. Louis, Oct. 8th,* 1818. Morgan Byrne."

[Bagnell et al. vs. Broderick.]

Which is founded on the following certificate of location:

"No. 448.

"*St. Louis, Office of the Recorder of Land Titles,*
"*September,* 1818.

"I certify that a tract of six hundred and forty acres of land, situate, Big Prairie, in the county of New Madrid, which appears, from the books of this office to be owned by John Robertson, Jr., has been materially injured by earthquakes; and that in conformity with the provisions of the act of Congress, of the 17th February, 1815, the said John Robertson, Jr., or his legal representatives, is entitled to locate six hundred and forty acres of land, on any of the public lands of the territory of Missouri, the sale of which is authorised by law. Vide Com'rs Cer'e, No. 1126, ext'd.

"Frederick Bates."

This is obviously the foundation of the survey and patent to John Robertson, Jr.; a fact admitted; but it is insisted that Byrne had the better title to the recorder's certificate; that it issued to him in fact as the "legal representative of John Robertson, Jr.;" and that the notice of entry filed with the surveyor general, vested in Byrne a title of a character on which he could have maintained an ejectment against Broderick; and that, consequently, his devisees could successfully defend themselves. That they could, if the entry be the better title, must be admitted.

There is evidence in this record, tending to show that Morgan Byrne made the relinquishment of the New Madrid claim; but the same evidence, (being extracts from the records of the recorder's office,) show that the location certificate was granted to John Robertson, Jr. They are as follows:

| Warr. or ord. of survey. | Survey. | Notice to the recorder. | Quan'ty claimed. | Where situated. | Poss'n, Inh'n, Cult. &c. | Opinions of the recorder. |
|---|---|---|---|---|---|---|
| By U. S. Com's for 200 arpens, cer. 1126. | | John Robertson, Jr. | 750 arpens. | Big Prairie. | | Granted 640 acres E. |

A list of relinquishments of lands materially injured by earthquakes, in the late county of New Madrid, (present) state of Missouri, under the act of Congress of 17th February, 1815.

| Loc'n cert. | Claimants of record. | Quantity. | Situation. | Relinquishment by whom, and general remarks. |
|---|---|---|---|---|
| 448 | John Robertson, Jr. | 640 acres. | Big Prairie. | Morgan Byrne, legal representative. |

This evidence, taken in connexion with the deeds to Edward Robertson, and those from him and others to Byrne, it is insisted, esta-

2 p 2                57

blish the better equity to have been in the latter; and that this equity can be made available for the defendants in the Circuit Court, by force of the act of the legislature of Missouri, which provides, that an action of enactment may be maintained on "a New Madrid location."

Our opinion is, first, that the location referred to in the act, is the plat and certificate of survey returned to the recorder of land titles; because, by the laws of the United States, this is deemed the first appropriation of the land, and the legislature of Missouri had no power, had it made the attempt, to declare the notice of location filed with the surveyor general an appropriation contrary to the laws of the United States. The survey having been made and certified to the recorder in the name of John Robertson, Jr., Byrne had no title that would sustain an ejectment in any case; and of course, those claiming under him cannot successfully defend themselves on the evidence they adduced.

But secondly, suppose the plat and certificate of location had been made and returned to the recorder in the name of Morgan Byrne; and that it had been set up as the better title in opposition to the patent adduced on behalf of the plaintiff in ejectment; still, we are of opinion the patent would have been the better legal title. We are bound to presume for the purposes of this action, that all previous steps had been taken by John Robertson, Jr., to entitle himself to the patent, and that he had the superior right to obtain it, notwithstanding the claim set up by Byrne; and having obtained the patent, Robertson had the best title, (to wit, the fee,) known to a Court of law.

Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title; until its issuance, the fee is in the government, which, by the patent, passes to the grantee; and he is entitled to recover the possession in ejectment.

If Byrne's devisees can show him to have been the true owner of the 750 arpens of land, relinquished because injured by earthquakes, and that the patent issued to John Robertson, Jr., by mistake; then the equity side of the Circuit Court is the proper forum, and a bill the proper remedy, to investigate the equities of the parties. But whether any equity existed in virtue of the act of 1815; and if so, whether it was adjudged between the parties by the recorder of land titles; are questions on which we have formed no opinion, and wish to be understood as not intimating any.

We have been referred to the case of Ross vs. Barland, 1 Peters, 662, as an adjudication involving the principles in this case; we do not think so. In that there were conflicting patents; the younger being founded on an appropriation of the specific land, by an entry in the land office of earlier date than the senior patent. The Court held that the entry and junior patent could be given in evidence in

connexion as one title, so as to overreach the elder patent. The practice of giving in evidence a special entry in aid of a patent, and dating the legal title from the date of the entry, is familiar in some of the states, and especially in Tennessee; yet the entry can only come in aid of a legal title; and is no evidence of such title standing alone, when opposed to a patent for the same land. Where the title has passed out of the United States by conflicting patents, as it had in the case in 6 Peters, there can be no objection to the practice adopted by the Courts of Mississippi to give effect to the better right, in any form of remedy the legislature or Courts of the state may prescribe.

Nor do we doubt the power of the states to pass laws authorizing purchasers of lands from the United States, to prosecute actions of ejectment, upon certificates of purchase, against trespassers on the lands purchased; but we deny that the states have any power to declare certificates of purchase of equal dignity with a patent. Congress alone can give them such effect.

For the several reasons stated, we have no doubt the judgment of the Circuit Court was correct; and order it to be affirmed.

In the cases of Sampson against Broderick, and M'Cunie against the same, the judgments are also affirmed.

Mr. Justice M'LEAN dissented.

Being opposed to the decision of the Court in this case, I will state, as shortly as I can, the grounds of my dissent. I am induced to do this from the peculiar circumstances of the case.

To sustain his action of ejectment, the plaintiff, in the Circuit Court, gave in evidence a patent to John Robertson, Jr.; which states "that he had deposited in the general land office a certificate numbered one hundred and ninety-two, of the recorder of land titles at St. Louis, Missouri; whereby it appears that, in pursuance of an act of Congress, passed 17 February, 1815, entitled, an act for the relief of the inhabitants of the late county of New Madrid, in the Missouri territory, who suffered by earthquakes, the said John Robertson, Jr., is confirmed in his claim for six hundred and forty acres of land, being survey No. 2,810, and section thirty-two, of township fifty, north, in range fifteen, west of the fifth principal meridian line," &c. The patent bears date 17th June, 1820. On the 16th November, 1830, the patentee conveyed the land to Augustus H. Evans. And on the 7th June, 1831, Evans conveyed to Broderick, the lessor of the plaintiff.

The defendants first gave in evidence a confirmation of a Spanish claim for settlement and cultivation to John Robertson, Jr., for six hundred and forty acres of land in the Big Prairie, near New Madrid. The entire interest in this right was conveyed by John Robertson, Jr., to Edward Robertson, Sr., the 29th May, 1829.

On the 30th October, 1813, Edward Robertson, Sr., conveyed three hundred arpens of this tract of land to Morgan Byrne. And

the 11th of September, 1816, he conveyed to Byrne two hundred and fifty arpens more of the same tract. On the 29th October, 1816, Robertson conveyed to William Shelby two hundred and fifty arpens of the same tract. And on the 2d December, 1816, Shelby conveyed to Levi Grimes; and on the 26th February, 1817, Grimes conveyed to Morgan Byrne.

By these conveyances Byrne became vested with the entire original right of John Robertson, Jr., to the tract of land, as above stated.

Under the act of Congress of the 17th February, 1815, any person owning land within the county of New Madrid, in the Missouri territory, which had been injured by earthquakes, had the right to relinquish the same to the United States, and receive a certificate therefor, specifying the quantity of acres, not to exceed six hundred and forty, which he was authorized to locate on any land of the United States; and on such location being made, the land relinquished became absolutely vested in the United States.

Under this law Byrne relinquished to the United States the six hundred and forty acres in the Big Prairie, as the legal representative of John Robertson, Jr., who was the claimant of record originally. The following is a copy of the certificate of location issued on this relinquishment:—

No. 448. St. Louis, Office of the Recorder of land titles.
September, 1818.

I certify that a tract of six hundred and forty acres of land situate, Big Prairie, in the county of New Madrid, which appears from the books of this office to be owned by John Robertson, Jr., has been materially injured by earthquakes; and that in conformity with the provisions of the act of Congress of the 17th February, 1815, the said John Robertson, Jr., or his legal representatives, is entitled to locate six hundred and forty acres of land on any of the public lands of the territory of Missouri, the sale of which is authorised by law.

[Signed.]　-　　　　　　　　FREDERICK BATES.

And on the 8th of October, 1818, Byrne made the following location:—

"Morgan Byrne, as the legal representative of John Robertson, Jr., enters six hundred and forty acres of land, by virtue of a New Madrid certificate issued by the recorder of land titles for the territory of Missouri, and dated St. Louis, September, 1818, and numbered 448, in the following manner, to wit: to include section No. thirty-two, in township No. fifty, north of the base line, range No. fifteen west of the fifth principal meridian." And here the evidence of the defendants closed.

On this state of facts, the defendant's counsel moved the Court to instruct the jury, that the entry or New Madrid location, made by Morgan Byrne in his own name, is proof of a legal title to the land;

and is a sufficient defence against all persons who do not show a better legal title to the same land. That if the jury believe the patent, a copy of which has been given in evidence by plaintiff, issued on the location made by Morgan Byrne, the patent is not such title as will avail against the location.

The revised code of Missouri of 1825, which was in force when this action was commenced, provides that a New Madrid location shall be a title on which to sustain an action of ejectment against any person not having a better title.

The defendant's show, by deeds of conveyance from John Robertson, Jr., that Morgan Byrne had a full and clear title to the 640 acres of land near New Madrid; that he relinquished said land, under the act of Congress of 1815, to the United States, and located the section of land now in controversy. He being the owner of the land, as the legal representative of John Robertson, Jr., was the only person who could relinquish it to the United States. By virtue of this relinquishment, and in consideration of its having been made, he received the certificate which authorised him to locate the same number of acres of any part of the public land which had been offered for sale.

It appears that under the law of 1815, the New Madrid claimant had to show a confirmation of the land claimed by him on the public records in the name of the first claimant, and to show a derivative title to himself, before he was permitted to relinquish it to the government. And in the present instance, John Robertson, Jr., being the original confirmee of the title, the record was produced establishing the fact; and Byrne then proved, by an exhibition of his deeds, that Robertson had parted with all his right in the premises, and that he was his legal representative. It was in this capacity that the relinquishment was made, and the certificate of location was issued. And he made the location of the land in controversy in the same character.

In this view of the case there can be no doubt that Byrne or his assignee has the title to the land. And that there is possession under this title is shown by the fact that the action of ejectment was commenced by the lessor of the plaintiff, to obtain the possession.

It appears that the patent was issued to John Robertson, Jr., improperly; as in 1809 he conveyed all his interest in the land relinquished. Before the emanation of the patent, he had not a shadow of title, either equitable or legal, to the land in dispute. And the patent must have been fraudulently obtained by him, on the presentation of the certificate of location made by Byrne. The evidence on this point is too clear to be controverted. It is established by deeds executed in the most solemn form, and by records which contain the highest verity. The inference of the fraud is as irresistible as are the facts from which it is inferred.

The proof of Byrne's title is irrefragable; and it is equally clear

that Robertson had no title to the land, until he fraudulently obtained the patent. Having no shadow of right, he could obtain the patent in his own name by no other than fraudulent means. And no Court which could feel itself authorised to look behind the patent, could hesitate to pronounce the title of Byrne valid against the patentee, who has sought to cover his fraud by this legal instrument.

And the question here arises, whether, under the Missouri statute, the Circuit Court ought not to have instructed the jury, that under the deeds and records given in evidence, Byrne's was the better title. I cannot doubt that this instruction should have been given.

The statute makes the location a legal title for the purposes of the action of ejectment. And if it be a good title, on which to bring an ejectment, it must be equally effectual in the defence of such an action. This title, the statute declares, shall prevail against any person who has not the better title.

And what kind of a title is this better title. Surely it is a title that under the facts and circumstances of the case ought to prevail against that to which it is opposed.

It is urged that this better title must mean a better title than others of the same class; but that it can never be considered a better title against a patent. And why may it not be considered a better title against the patent?

The title set up in the defence derives its validity from laws of the United States, as entirely as the patent. The question then is, which is the better title of the two, both originating from the same sovereignty? The statute of Missouri does nothing more than declare that a Court of law may do in an action of ejectment, what no one doubts would be competent for a Court of chancery to do.

And may not the legislature do this? It does not originate a title, under any pretence of state sovereignty, which is to operate against a patent from the United States; but it gives to a Court of law, powers in the action of ejectment, which in some other states are exercised only by a Court of chancery. This has always been the rule in Pennsylvania, and in other states which have no Court of chancery.

Technically, a location is an inchoate legal title. But, out of this class of titles a new rule of equity grew up, by the practice of the Courts of Kentucky. And this rule is not in conformity with the long established principles of a Court of equity.

As between conflicting entries, the doctrine of notice is utterly discarded. The entry must be a legal one, by embracing all the substantial requisites of the law, or a subsequent entry may be made on the same land, though the locator have full knowledge of the first entry.

This forms an anomaly in the history of equity jurisdiction. It authorizes a Court of equity to give effect to that which is, in itself, strictly a legal right.

Principles growing out of this peculiar system have been acted

on from necessity, by the Courts of the United States; but they have not been regarded as appropriate to an equitable jurisdiction in other cases.

Had the Courts of Kentucky acted upon entries as legal titles, whether under their own rules, or by virtue of statutory provisions, the Courts of the United States would have adopted the same mode of proceeding. In the state of Tennessee, a junior patent under the first entry will overreach an elder patent, under a junior conflicting entry. This, in Kentucky, would be the exercise of an equitable jurisdiction. In Missouri, under the statute, it would be examinable at law.

It is said, the patent merges the location. This, under the Kentucky system is true; but, where the patent has been issued, through a mistake or fraud, to an individual who was not entitled to it; a Court of equity will control the right of the patentee, by compelling him to convey to the person who has the better right.

And why may not a Court of law protect this better right. The right may be investigated as fully, and considering the nature of the rights under the Missouri statute, as safely in a Court of law as in a Court of chancery. But this, with the Court, is not a question of policy. It is a rule of evidence and of property adopted by the state of Missouri; and our whole course of adjudications requires us to regard it. There is therefore no more violation of principle in examining the title of Byrne at law, then in equity. The result is substantially the same in both modes; as the title of Byrne must be protected from the fraud by which it has been attempted to be overreached and subverted.

Judging from the evidence of this case, I have never seen a grosser act of fraud than the obtainment of this patent by Robertson; eleven years after he had conveyed every vestige of right in the land which was relinquished as the consideration to the United States for the location in controversy.

It was stated in the argument that Byrne made the location, but took no step subsequently to perfect the title. That Robertson had the survey executed and returned. This is an argument against the record. By the certificate which authorized the location it was required to be located on land, " the sale of which is authorized by law." And no land is authorized by law to be sold, except such as has been surveyed by the officers of the United States. The location in question was made on a section designated by its number, township, and range, and which of course had been surveyed.

As Robertson's name was inserted in the location agreeably to the forms used, he being the original claimant on record, of the New Madrid tract relinquished, he was enabled to practise an imposition and fraud on the commissioner of the general land office, and obtain the patent.

It is a well settled principle, that fraud may be investigated as well at law as in chancery; and I am strongly inclined to think if

this fraud had been brought before the Court and jury, independent of the statute of Missouri, they must have determined that it vitiated the patent.

Can any one look at these two titles, that of Byrne having been obtained by a fair purchase, relinquishment, and location; and that of Robertson by fraudulently obtaining the patent, and hesitate in deciding which is the better title. And it appears to me that the statute of Missouri in providing that such a location shall be a title, on which an action of ejectment may be sustained, covers the whole case; and enables the Court and jury to determine which is the better title.

In the case of Sims' lessee *vs.* Irvine, 3 Dallas 457, this Court say, " in Pennsylvania, where the consideration has been paid, a survey, though unaccompanied by a patent gives a legal right of entry, which is sufficient in ejectment." Why they have been adjudged to give such right; whether from a defect of chancery powers, or for other reasons of policy or justice is not now material. The right once having become an established legal right, and having incorporated itself, as such, with property and tenures; it remains a legal right notwithstanding any new distribution of judicial powers, and must be regarded by the common law Courts of the United States, in Pennsylvania, as a rule of decision.

And in the case of Ross *vs.* Doe on the demise of Barland et al. 1 Peters, 664, this Court say, " for the plaintiff it is argued that the state Court erred in deciding that the elder grant should not prevail in the action of ejectment."

The question in this case was between a claimant under a patent of the United States, and one who claimed the same land under a donation certificate, given by commissioners. The question was identically the same, in principle, as in the case under consideration.

And this Court decided, " where by the established practice of Courts in particular states, the Courts in actions of ejectment look beyond the grant, and examine the progressive stages of the title from its incipient state until its consummation; such a practice will form the law of cases decided under the same, in these states: and the Supreme Court of the United States regard those rules of decision in cases brought up from such states, provided that in so doing, they do not suffer the provisions of any statute of the United States to be violated. Under the act of Congress, of March 3, 1803, such lands only were authorized to be offered for sale as had not been appropriated by the previous sections of the law, and certificates granted by the commissioners in pursuance thereof. A right, therefore, to a particular tract of land derived from a donation certificate, given under that law, is superior to the title of any one who purchased the same land at the public sales." This was the rule in ejectment cases in the State of Mississippi, from whence this cause was brought.

This decision was given in 1828; the one cited from Dallas was

[Bagnell et al. *vs.* Broderick.]

made in 1799; and the rule laid down in these cases has not been questioned by any other adjudication of this Court. Other decisions might be referred to of the same import, but it is deemed to be unnecessary.

I will, however, notice a case decided at the present term, which, in my judgment, in principle, has a strong application to the question under consideration. By a statute of Kentucky it is provided that "any person having both the legal title, and possession of land, may institute a suit against any other person setting up a claim thereto; and if the complainant shall be able to establish his title to such land, the defendant shall be decreed to release his claim thereto, and to pay the complainant his costs," &c. Now here is a statute which creates an equity, or rule of proceeding in a Court of chancery; which, in the case of Clark *vs.* Smith has been very properly recognized as a rule of proceeding in this Court.

Now the statute of Missouri created a legal right, or rule of proceeding in the action of ejectment. And if the Kentucky statute can give the rule of proceeding to this Court, in chancery, why may not the Missouri statute do the same thing at law.

In the state of Illinois, by statute, a certificate of the register of the land office of the United States of an entry of land, is made a good title on which to sustain an action of ejectment: and the Supreme Court of that state has long since settled the rule, that such a title may be held good against a patent wrongfully or fraudulently obtained. In the sate of Alabama there is a similar law, and it has received, by the Supreme Court of that state, the same construction.

The idea, that if a state can pass a law authorising an action of ejectment on a certificate of the register, and that if this certificate, under any circumstances should be held the better title, against a patent wrongfully issued would endanger the public lands; is so novel and so unfounded that I must notice it. Had not such an argument been advanced, I should have supposed that two things so wholly disconnected as this premiss and conclusion could never be associated in the mind of any one.

How is the public lands endangered by the establishment of this rule?

The certificate as well as the patent emanate from the federal government. Now if the patent through mistake or fraud has been issued wrongfully, no one doubts that a Court of chancery may protect the right, in such a case, of the certificate holder. The state of Illinois says, this may be done at law, and this is the whole matter. If there be danger to the public lands in this, it is not only a modern discovery: but to guard effectually against the danger, the states must abolish their Courts of chancery, or restrict them under all circumstances from questioning the right of the patentee. If the state Courts cannot try these cases between their own citizens and under their own laws, where are they to be tried? All who claim under a patent are entitled to the same rights as the patentee.

[Bagnell et al. *vs.* Broderick.]

Mr. Justice M'KINLEY concurred in opinion with Mr. Justice M'LEAN.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the district of Missouri, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed with costs.

## NOTE.

No. 192.   Office of the recorder of land titles.
St. Louis, March 9, 1820.

I certify, that in pursuance of the act of Congress, passed the 17th day of February, 1815, a location certificate, No. 448, issued from this office in favour of John Robertson, Jr., or his legal representatives, for six hundred and forty acres of land; that a location has been made, as appears by the plat of survey herewith, and that the said John Robertson, Jr., or his legal representatives, is entitled to a patent for the said tract, containing, according to said location, six hundred and forty acres of land, being section No. 32, in township No. 50, north of base line—range No. 15 west of 5th principal meridian. No. of survey, 2,810.   FREDERICK BATES.

Township No. 50, North of the Base line, Range No. 15, West fifth principal meridian.

| 79 | 50 |
|---|---|
| No. 448. | |
| John Robertson, Jr. | |
| Section 32. | |
| 640. | |

Surveyors' Office, St. Louis.
January 15, 1820.

I certify that section No. 32, in township No. 50, north of the base line, range No. 15, west of the 5th principal meridian, was located on the 8th day of October, 1818, for John Robertson, Jr., or his legal representatives, by virtue of No. 448, dated September, 1818, issued by the recorder of land titles for the Missouri territory, to said John Robertson, Jr., or his legal representatives, for six hundred and forty acres of land, in conformity with the provisions of the act of Congress of the 17th February, 1815, for the relief of sufferers by earthquakes in the late county of New Madrid.   WM. RECTOR.

To Frederick Bates, Esq., Recorder of land titles for the Missouri Territory.