SAMUEL B. WIGGINS *v.* PHILIP GUIER.

Where evidence is certified by the Clerk, or a statement of facts is made out by the District Judge, the Supreme Court does not examine the same as a Court of Error—but reviews and weighs the evidence and gives effect to that which preponderates, precisely as the jury or the District Judge ought to have done.

Where parties desire it the court will, in a proper case, find the facts in such a manner that the questions of law can be fairly raised for the consideration of the Supreme Court of the United States.

The title of the United States to the selections of land made by the State of Louisiana, under the Act of Congress, approved September 4th, 1841, passed out of the government and vested in the State of Louisiana at the time of the final approval of the selections by the Secretary of the Interior, unless there had been some legal claim to them, at the time, obtained from the General Government which prevented the acquisition by the State. Claims to these selections must be established by certified copies and other legal evidence, and the unconditional selection of lands under the Act, and the approval of them by the Departments at Washington, is superior in proof to any recital contained in subsequent letters of the Commissioner of the General Land Office to the Register and Receiver—and to any report made by the Register and Receiver to the Commissioner favorable to the rights of those claiming these selections under the General Government.

Although the action of the General Land Office is generally conclusive upon the subject of the grant of public lands, up to the issuing of the patents or other divestiture of title, it could not by its subsequent action upon a fictitious claim defeat rights already vested.

APPEAL from the District Court of the Parish of Carroll, *Farrar, J.* *Goodrich & De France* and *H. Short*, for plaintiff. *Louis Selby*, for defendant and appellant.

MERRICK, C. J. This case was before us last year and was remanded for a new trial. See 12 An. 177. The plaintiff, it is seen, claims in virtue of a location by the State, approved by the Secretary of the Interior, of the land in question as *Internal Improvement land* and a patent from the Governor of Louisiana.

The defendant claimed under a patent issued by the President of the United States. There are charges of fraud made by the plaintiff against the defendant. Judgment was a second time rendered in favor of the plaintiff and defendant again appeals.

As this case may go to the Supreme Court of the United States, we take occasion to correct an erroneous impression in regard to the powers of this court over the facts of the case. Where evidence is certified by the Clerk, or a statement of facts is made by the district judge, this court does not examine the same as a Court of Error, but passes upon the truth of supposed facts, disregards the testimony of witnesses unworthy of belief, reviews and weighs the evidence, gives effect to that which preponderates, and, in fine, pronounces upon the testimony in the case precisely as the jury or the district judge ought to have done. *Jones* v. *Periera*, 13 An. 102.

And where the parties desire it the court will, in a proper case, find the facts in such a manner that the questions of law can be fairly raised for the consideration of the Supreme Court of the United States, which, on a writ of error, has not the like power over questions of fact.

On an examination of the testimony of this case we find that the land in controversy was selected on the 19th day of July, 1858, by the State of Louisiana, under the Act of Congress, approved September 4, 1841. (5th vol. Statutes at Large, p. 455, sec. 8.) This selection was finally approved by the Secretary of the Interior. This appears by an official communication from the Commissioner of the General Land Office at Washington to the Governor of Louisiana, under the date of November 26, 1849. In this communication, showing the action of the land office, the approval of the selection by the State of the land in controversy appears to have been unconditional, although another list accompanied the same, of what were called "suspended" selections. These were, where the selections were in conflict with preëmption claims. On the final approval of the selections by the Secretary of the Interior, we think the title of the United States to the land in controversy had completely passed out of the government and vested in the State of Louisiana, unless the defendant had some legal claim which prevented the acquisition by the State. And this question is now to be considered ; for, whatever right the State of Louisiana acquired, was conveyed to the plaintiff as the assignee of *James Taylor Wade*, the 20th August, 1850, by a formal patent.

The letters of the Register of the land office having been objected to, make no proof of the facts recited therein any more than did the testimony of the Register of the State Land Office, which was rejected. At most these letters only prove *rem ipsam*. Such facts must be established by certified copies and other legal evidence.

Looking then to the legal proof in this record (which, indeed, is not contradicted by any recital of the Register,) we find it clearly established that *Elijah Dempsey*, for whose estate the defendant pretends to claim, was entitled, at one time, to a preëmption of the tract of land in controversy, but that he sold the same in February or March, 1837, and having been suffered to remain on the same by the purchaser, he immediately commenced another improvement on the east side of Bayou Maçon, but died before he moved to the same ; that the widow had the house finished upon it (the new improvement) after the death of *Elijah Dempsey* ; that the widow married one *James Dempsey* and moved to her new house ; that the place in controversy was cultivated in 1838 by *C. D. Richardson*

as the lessee of *N. T. Richardson*, the purchaser from *Elijah Dempsey*; that *Richardson* sold to *Moore & Laughlan*, by notarial act conveying possession. In like manner *Moore* sold to *Laughlan* and *Laughlan* to *Foster*, and that *Guier* acquired possession of the property from *Foster* in 1844, and then cultivated it himself and leased it as owner. That no inventory was ever made of the property as belonging to the succession of *Elijah Dempsey*, deceased; that *Guier* was not appointed administrator of the succession of *Elijah Dempsey* until the 26th day of December, 1848, and that hence his possession and acts of ownership over the tract of land in controversy were in his own right. It is thus apparent that whatever right *Elijah Dempsey* may have had in 1837 was forfeited by ten years abandonment by his widow and heirs; and it is further apparent, as we think, that the application for letters of administration by *Guier* was for the purpose of protecting the possession which he had acquired in 1844, and of defeating the location and sale by the State.

Did the action of the Register and Receiver and Commissioners of the Land Office at Washington give validity to this (in the eye of the law) fraudulent claim on the part of *Guier*, and thus defeat the location by the State? We have just seen that the lands were located by the State on the 19th day of July, 1848, and as appears from the official communication from the land office at Washington to the Governor of the State of Louisiana, unqualifiedly approved by that department and the Secretary of the Interior, on the 26th day of November, 1849. On the 4th of August, 1849, more than a year after the lands had been located, the Register notified the Commissioner of the General Land Office of defendant's claim, and on the 25th of January, 1850, after the selections of land had been approved by the Secretary of the Interior, the Register again called the attention of the Commissioner to the subject, stating that the defendant, as administrator, had renewed his application to enter the land. In reply, the Commissioner says, notwithstanding his communication to the Governor that the selections were approved on the 20th of November, 1849, by the Secretary of the Interior, "subject to the usual conditions of such approvals," and directs the Register, in his view of the facts presented by him, to transmit to his office the proof in support of the claim, with his opinion and that of the Receiver. This letter is dated February 27, 1850.

On the 28th of March, 1850, the Register wrote, that he considered the proof to sustain defendant's claim ample, and recommended the claim be allowed. On the 13th of April, 1850, following, the Commissioner again wrote to the Register and instructed the Register and Receiver as follows, viz :

"In the absence of any other conflicting interests, this office would have no hesitation in confirming your opinion as to the validity of the preëmption claim, taking it for granted that the possession of 1837 had been continued by the heirs, or some one for them up to the time when the testimony was presented and the claim sought to be consummated, but as the land has been selected by the State and that selection approved by the Secretary of the Department, (subject, however, to the rights of others,) it is deemed necessary that testimony should be furnished going to show that continued possession, it not being in accordance with the spirit and intent of the law to grant, under these old preëmption claims, lands which may have been cultivated and possessed as prescribed by law, but which was subsequently abandoned by the claimant, or those rightfully claiming under him. If such testimony is produced, you are authorised to allow the entry in the name of the heirs of *Elijah Dempsey* of said N. E. quarter of Sec. 23."

"Give the party holding under the State notice, when the additional testimony is to be furnished, and let him be heard in the matter."

Notice appears to have been given, and the parties were present when this additional proof was taken. On the 30th of September, 1850, the Register or Receiver report to the Commissioner of the General Land Office favorably to the heirs of *Elijah Dempsey*, deceased, and on the 18th of October following the acting Commissioner directed the entry to be made on the payment of the requisite purchase money. The patent issued on the 1st day of December, 1851, to the heirs of *Elijah Dempsey*, deceased.

We incline to think that the official communication of the department at Washington of the unconditional selection of the tract of land in controversy to the Governor is superior, in proof, to any recital contained in the subsequent letters of the Commissioner to the Register and Receiver, and that such approval vested the title to the land in the State of Louisiana. It was then incumbent on the defendant, if any other and higher evidence existed showing that the approval was only conditional, to produce it.

But whether the approval were absolute or subject to the rights of others, we are of the opinion that the State of Louisiana had, and the plaintiff through the State, has the better right, and that whatever title the defendant may have acquired under the patent issued in favor of the heirs of *Elijah Dempsey* should be held to inure to the benefit of the plaintiff, and that the judgment of the lower court ought to be affirmed. The State of Louisiana, whether the approval of the Secretary of the Interior were absolute or conditional, as just observed, acquired a vested right, which could not be defeated except by a real right on the part of those whom the defendant pretends to represent. The proof clearly shows that no such right existed, for the premises had been abandoned by all persons having a right to claim the benefit of the pre-emption claim of *Elijah Dempsey* more than ten years before the selection by the State of Louisiana, and although the action of the Land Department is in general conclusive upon the subject of the grant of the public lands up to the issuing of patent or other divestiture of title, we are of the opinion that it could not by its *subsequent action* upon a fictitious claim defeat rights already vested, and that it is inequitable to permit the defendant to hold rights so acquired by his wrongful acts. See cases of *Lytle* v. *State of Arkansas*, 9 Howard, 314; *Foley* v. *Harrison*, 15 Howard, 432; *Barnard's heirs* v. *Ashley's heirs et al.*, 18 Howard, 43; *Hood* v. *Martin*, 11 An. 553; 10 An. 182; 13 Peters, 436.

This view of the case renders it unnecessary to consider the question of legitimacy raised by plaintiff's counsel, or whether the defendant made his application to the land office within a year after the return of the approved township map.

Judgment affirmed.