## WIDTH OF THE NATIONAL PIKE AND ABUTTING RIGHTS.

- Common Pleas Court of Clark County.

EDWIN O. BOWMAN v. THE WESTERN UNION TELEGRAPH COMPANY.

Decided, March 27, 1920.

*National Pike.—Width of—Abutting owner's Title to the Middle of the Road—Encroachment on Roadway does not Give Title by Adverse Possession—Change in Location of Telegraph Poles May not be Made Without Compensation to Abutting Owner Where a New Burden Would be Imposed.*

1. Eighty feet was fixed as the width of the roadway, by the federal act of 1820 providing for the survey of the Cumberland Road, later known as the National Pike, from Wheeling, West Virginia, westward through the states of Ohio, Indiana and Illinois, and as originallly built the width of the road between Columbus and Springfield was eighty feet.

2. The federal government retains title to land until the issuance of a patent.

3. When property was purchased from the government in 1811, but payments were not completed nor patent issued until 1825, the land

then patented was subject to the right of way for the road thereafter to be located but provided for in the federal act of 1820.

4. The abutting landowner has the title to the middle of the road, subject to the right of the public to use the same for all requirements of travel.

5. An abutting owner, fencing in a part of the roadway not necessary for travel, acquires no right against the public by adverse possession no matter how long he has maintained his fence.

6. The state, at any time it becomes necessary, may have the use of the entire roadway for the purposes of public travel.

7. The appropriation of a portion of a public highway for the purposes of a telegraph line is a new use and an additional burden upon the landowners right in the road.

8. A telegraph company whose poles and lines have occupied a certain portion of the highway for many years can not, without compensation to the abutting owner, occupy a new position which will lay a new and additional burden on such abutting owner's interest in the roadway.

9. The fact that the state, through its officers, has ordered a telegraph company to move its poles so that the highway may be improved does not relieve the telegraph company from such obligation.

10. The right of the abutting property owner to use the roadway, subject to the right of the public, is property and such right can not be materially abridged for uses other than those of public travel, without compensation, even though the injury may be slight.

*J. E. Bowman* and *John H. Cole,* for plaintiff in error.

*John G. Price,* Attorney General, *B. W. Gearheart* and *William J. Meyer,* for defendant in error.

GEIGER, J.

The petition alleges that the defendant is a corporation organized under the laws of New York, owning an electric telegraph extending from Springfield to the city of Columbus; that the plaintiff is the owner of a farm, including all that portion of n. e. quarter of Section 35, Town. 6, Range 9, M. R. S., lying north of the National Road in Harmony Township; that said National Road is a public highway not exceeding sixty feet in width; that the land of the plaintiff abuts on the north side of said highway for a distance of one hundred and sixty rods; that the defendant has maintained for many years a line of poles with wires along the north side of the National Road, about twenty-eight feet from the center of the road and about two feet

south of the fence between the plaintiff's land and the high-way, which fence has been maintained in its presaent location for over fifty years; that the defendant threatens to move said pole line and wires and fixtures from its present location on the frontage of plaintiff's land and relocate the same about seven-teen feet north of its present location and outside the limitation of the highway and on the lands of the plaintiff, to the injury of the plaintiff's land and without any right or authority, to the plaintiff's irreparable damage. The plaintiff prays for a tem-porary restraining order and that upon the hearing the injunc-tion be made perpetual.

The telegraph company answers admitting the ownership of the plaintiff's land and that it maintains and for many years has maintained a line of poles with wires along the National Road and denies each and every other allegation.

The state of Ohio intervenes through its Attorney General and answers admitting certain allegations in reference to the location of the land and the line of wires and avers that it is proceeding to improve that section of the road which adjoins plaintiff's land and as a part of said improvement has ordered the defendant telegraph company to move its line northward from its present location and that the proposed action of the defen-dant, The Western Union Telegraph Company is in pursuance of such order.

The question of fact involved in the case is the width of the National Pike throughout its length and especially where it passes along the plaintiff's property. The plaintiff has intro-duced testimony tending to show that the fence enclosing his land is now and for many years has been less than forty feet north of the center line of said road.

The act of Congress, approved May 15, 1820, authorizing sur-veys to be made for a continuation of the Cumberland Road from Wheeling in the state of West Virginia through the states of Ohio, Indiana and Illinois provided:

"and so much of the lands of the United States as may be in-cluded within the same shall be and is hereby reserved and ex-cepted from the sales of public land; the said road to be eighty feet wide and designated by marked trees, stakes, etc."

Photographic copies of contracts for the construction of that portion of the road west of Columbus are introduced showing that there were four separate contracts for the construction of said road, all made in April 1833 and all having the following specifications:

"All stumps and roots are to be grubbed with care, to a distance of twenty feet on each side of the center of the said road, and all trees, logs, brush and rubbish, are to be carefully removed for the space of forty feet on each side the same center."

These contracts were made in accordance with advertisements that appeared in the Ohio State Journal in 1833 asking for bids on the work covered by the contract, designating the width from which all trees, brush and rubbish was to be removed as forty feet on each side of the center line of the road. A report to the Ohio Senate of a special committee, dated March 16, 1839, indicates that the portion of the road between Lafayette in Madison county and Springfield in Clark county was partially finished.

The plat of the village of Brighton, Clark county, Ohio, surveyed in 1835, recites that the National Road, which forms the center street of the town, is eighty-two feet in width.

The plat of Vienna, Clark county, Ohio, a village west of Brighton and about six miles east of the land in question, surveyed in 1833, recites that the street called Main street, being the National Road, is laid out eighty-two feet broad.

The plat of the village of Harmony, Clark county, Ohio, about one-quarter of a mile west of the plaintiff's property, surveyed in 1853, shows the National Road at that point to be about eighty-two feet wide.

The plat of Donnelsville, six miles west of the city of Springfield, surveyed in 1836, recites that Main street, being the National Road, is eighty feet wide.

Main street in Springfield, which is the National Pike, is sixty-six feet wide.

Evidence is introduced showing that on the portion of the plaintiff's land, east of Beaver creek, there is a line of old fence posts approximately forty feet north of the center line of the

pike, and that west of said creek there are several stumps of old posts about that distance from the center of the pike. Two government mile posts, near the plaintiff's land are about forty feet from the center line of the road.

It appears that the center of the pike is clearly marked by the center of the wooden bridges, which yet remain, spanning streams crossing the pike, one of which is located immediately in front of the plaintiff's land. The engineer for the State testifies that for the entire length of the road from Wheeling, West Virginia, through Zanesville and Columbus to Springfield all abutting property owners, except plaintiff, have recognized that the width of the National Road is eighty feet, and it is further testified to by the engineers for the State that in the construction of the road it is necessary to include within the road limits this entire width of eighty feet.

The act of the Ohio Legislature of the date of May 13, 1861, (58 O. L., 140) entitled "An Act for the preservation and repair of the National Road in Ohio, and for the collection of tolls thereon" has the following section:

"The proper limits of said road are hereby defined to be a space of eighty feet in width, forty feet on each side of the center of the graded road bed."

In a very interesting history of the old National Road through Maryland, Pennsylvania, Ohio and Indiana in the Ohio Archaeological and Historical Society Publications, Vol. 9, page 405 at pages 436 and 491, as well as in the appendix, will be found much that clearly establishes that the National Pike from Wheeling west through Ohio was established and originally constructed with a roadway eighty feet in width. The same records show that the road was eighty feet in width throughout its length in the state of Ohio.

The road was not actually constructead by the federal government beyond a point a short distance west of Springfield, the balance of the road in Ohio having been constructed by the state or the counties through which it passed.

The court has no difficulty in arriving at the conclusion from the evidence introduced, showing ancient records and plats, as

well as the enactments of Congress and the Legislature of the State of Ohio, that the National Road east of Springfield, past the plaintiff's property was originally eighty feet in width.

It is, however, claimed by the plaintiff that his predecessors in title acquired the land by purchase from the government in 1811 prior to the enactment of the act of 1820 establishing the width of the road as eighty feet, and that the government having parted with this in 1811, could not in 1820, by legislative enactment, establish the width of the road as eighty feet.

It appears that Andrew and John W. Edgar, on October 10, 1811, purchased the northeast quarter of Section 35, Town 6 Range 9, Champaign county, Ohio, which includes plaintiff's land and that the entry was assigned to Elnathan Bond, and that the final survey was issued by the government on March 23rd, 1825. The patent was issued October 22nd, 1825.

The court is of the opinion that the Act of 1820 reserved to the government for road purposes through the land of the plaintiff a strip eighty feet wide and that plaintiff's title to this land must be referred to the date of its patent, to-wit, 1825.

*Bagnell* v. *Broderick,* 38 U. S. 436; *Wilcox* v. *Jackson,* 38 U. S. 498; *Bronson* v. *Kupuk,* Federal Cases 1929.

Of course, at the time of the issuing of the patent the exact location of the road was not determined but it sufficiently appears that the road was as a matter of fact constructed in its present location in about the year 1833 and that while the entire strip of eighty feet never was used for actual traffic that as a matter of fact it was cleared of brush and undergrowth to that extent.

However, it appears that the plaintiff's fence for the last fifty years has been less than forty feet north of the center line of the road and it may be claimed that the plaintiff has acquired by adverse possession the right to so much of the roadbed as lies north of the fence, which has for a period of much more than twenty-one years been within the line of the road as originally established:

The case of *Heddleston* v. *Hendricks,* 52 O. S., 460, effectively disposes of any such question. It is there held:

"The right of an adjacent land owner to enclose by a fence, however, constructed, a portion of a public highway can not be acquired by adverse possession however long continued."

Wright, J., in the case of *McClellan* v. *Miller*, 28 O. S., 488, says:

"When roads are laid out and travel is limited necessity may not require that the whole width should be opened when a less quantity answers every purpose, but the fact that a portion of the highway remains in the possession of adjoining owners is merely a matter of sufferance from which rights can not accrue."

An abundance of authority is cited in the case of *Heddlestone* v. *Hendricks, supra,* to sustain the position that the plaintiff in this case can not acquire a right to a portion of the road as originally established for road purposes by adverse possession.

This brings us to a consideration of a more difficult question. The petition of the plaintiff seeks an injunction against the contemplated act of the defendant, which is the owner of a line of telegraph wires, in moving its line northward upon the lands of the plaintiff. It is alleged in the petition that the present line of wires is twenty-eight feet from the center line of the road and that the defendant company intends to move them northward seventeen feet. If the present location of the poles is twenty-eight feet from the center of the road and the defendant intends to move them seventeen feet still further north they would then be placed at a point forty-five feet from the center of the road, which is clearly within the property line of the plaintiff, even, though the road is conceded to be eighty feet in width.

However, at the trial it was not urged that the telegraph compand intended to move its poles beyond a point forty feet from the center line of the road, but it appeared that the new position of the poles was to be such that the cross-arms would not be extended beyond a line forty feet from the center of the road.

Whatever may be the right of the state to improve the road-bed to a point forty feet north of the center line for the purposes of travel we can not lose sight of the fact that this is an action to enjoin the telegraph company from encroaching upon the plaintiff's rights.

It is claimed by the state that the government having in the act of 1820 reserved the entire width of eighty feet for road purposes and that the state became the successor to the govern- no rights at all within the eighty-foot strip.

However, it appears to the court that the provisions of the act of 1820 that so much of the lands of the United States as may be included within the contemplated road shall be reserved and excepted from the sales of public lands and that the road shall be eighty feet wide, does not exempt this road from the law governing other public highways of the state of Ohio. The government patented to the plaintiff's predecessors in title the fee to this land subject to the road thereafter to be established and whatever rights abutting property owners have in the public highways belong to the plaintiff.

In the case of *Daily* v. *State,* 51 O. S., 348, it is said by Spear, J., on page 356:

"Whatever may be the rule in other states we have supposed that the question of the right in the right of way of a land-owner, whose title extends to the center of the road, is not an open one in Ohio. The question has been the subject of adjudication in a score of cases decided by this court (citing cases)."

Gilmore, Chief Justice, delivering the opinion in *R. R.* v. *Williams,* 35 O. S., 168, is quoted at length to the effect that as between the public and the owner of the land upon which a common highway is established, it is settled that the public has a right to improve and use the public highway for the purposes contemplated at the time it was established; that the public has a right to improve the road to make it convenient and safe for its use for the purposes of travel in the customary manner of locomotion of man and beast and by vehicles drawn by animals. Such constitutes an easement which the public acquires by appropriating the land for the right of way for a highway. The fee of the land remains in the owner.

The public has a right of passage and the right to improve and use the highway in a manner and for the purposes contemplated at the time it was established, but the abutting owner has a right to all the uses of the land not inconsistent with this right of passage and improvement. He has a right to cultivate and raise

crops on so much of his side of the highway as is not actually used for travel and has a right to plant and raise and enjoy trees and a right to the herbage and may graze his cattle thereon and may maintain trespass against others infringing on such right.

As to a country highway, while the public has the right of improvement and uninterrupted travel, the abutting owner has a right to all the uses of the land not inconsistent with its right of travel.

The right of the public is for road or street purposes and is limited to such control as is necessary to accomplish these purposes. As to country highways that object is accomplished ordinarily by securing free passage for travel and reasonable maintenance and repairs.

Many cases can be cited in Ohio where it has been held that the use of a portion of a public highway by corporations, such as telegraph, telephone, electric light or interurban companies imposes an additional burden upon the highway and infringes upon the private rights of the adjacent owners, and that the appropriation of the public highway for such purposes is a new one.

The fact that this use of the public highway may be sanctioned by some public body having such highway within its control does not permit such corporation to infringe upon the rights of the abutting property owner by the imposition of additional burdens. The ordinary burdens of a highway to which an abutting owner must submit include only those that are of a public nature and are incident to the ordinary and usual burdens borne by a highway, and when a private owner seeks to burden further the highway with its property and uses the same in the conduct of its business, the owner is protected against such encroachment by the Constitution and his rights may be taken only after proper compensation has been made to him, either by contract with the owner or by appropriation proceedings.

It is said in the case of *Daily* v. *State, supra*:

"Whatever grant of right in the highway is given telegraph companies as against the public, no right is permitted to be given them as against individuals. The question of legislative power to authorize a telegraph company to take the interest of adjoining land owners in the highway without compensation need not be considered."

"It follows that before the telegraph company could possess a right in such measure as to interfere with the right of the land owner in the highway, it would be required to acquire that right in the some one of the ways known to the law."

The court to sustain his views needs only to refer to the following cases without commenting upon them : *Cincinnati R. R.* v. *Cumminsville,* 14 O. S., 523; *Lawrence R. R. Co.* v. *Williams,* 35 O. S., 168; *R. R. Co.* v. *Telegraph Assn.,* 48 O. S., 390-426; *Daily et al* v. *State,* 51 O. S., 348; *Callen* v. *Electric Light Co.,* 66 O. S., 166; *Schaff et al* v. *R. R. Co.,* 66 O. S., 215; *Kellogg* v. *Traction Co.,* 80 O. S., 331, and the cases therein cited and commented on. See also, Longdorfs' Notes, pp. 546, 901, 903, and the cases therein cited and commented on.

The plaintiff in his petition has alleged that the defendant telegraph company is about to move its poles to a point where they would injure the property rights of the plaintiff. The fact that the defendant telegraph company has for a long period of time maintained its poles in such a portion of the highway as did not interfere with the plaintiff's property does not now permit the telegraph company to impose a new and different burden upon the plaintiff's property rights in the road by moving its poles to a point where they will be a further and additional burden upon the plaintiff's rights on account of its interfering with that portion of the highway now enjoyed by the plaintiff and not required by the state for highway purposes. It is not denied that the state may have the right to compel the plaintiff to permit it to use all the land within the eighty foot strip for highway purposes, but the state has no right to order plaintiff to submit to a new and additional burden sought to be imposed upon him by the telegraph company, merely because the poles of the telegraph company as now placed interfere with the contemplated improvement of the highway. If by reason of the new use being made of the highway the telegraph poles become an obstruction to traffic such that the state requires their removal, the telegraph company must, by contract or condemnation, acquire the right to place an additional burden upon the plaintiff's property right in the highway.

The plaintiff has a right to prevent the telegraph company from placing a new and additional burden upon his land and the state can not by its order give to such company the right to appropriate the plaintiff's land without compensation.

Whatever grant of right may be given to the telegraph company as against the public, no right can be given to it as against an individual. Before the telegraph company can possess the right to interfere with the right of landowner in the highway it must acquire that right in some way known to the law.

It may be said that the telegraph company does not seek to appropriate any of the property of the plaintiff. The term "property" as used in the constitution should have such liberal construction as to include every valuable interest which can be enjoyed as property and which is recognized as such. The right of the landowner to the use of the highway, subject to the use of the public, is property and as such is protected by the constitution, and any attempt by a private corporation to invade that right by the erection of its poles which are in any appreciable degree interfering with the full enjoyment of the landowner in the road is a taking of such property and must be upon the terms prescribed by the constitution. The matter involves the question of the right of the landowner to enjoy his property and the court is not required to determine whether the impairment of such right will be much or little. If it is appreciable in character and amount the plaintiff is entitled to relief.

Prayer for permanent injunction granted.