SOMMERVILLE, J.
On motion to dismiss appeal: The judgment in this case was read and signed February 3, 1911; and appellant moved for an appeal to this court on January 31, 1912.
Appellee moves to dismiss the appeal on the grounds that he has not been served with a petition of appeal and citation; that no petition for appeal has been filed in the cause; that the appeal was taken by motion in open court at a subsequent term to that in which the judgment was rendered; that a notice that an order of appeal had been taken in open court was served upon him March 14, 1912, more than one year after the judgment was rendered and signed.
All of these matters have been passed upon adversely to the position assumed by appellee, unless it be that the motion for the appeal did not ask that a citation of appeal issue, and that he be served.
The record shows that the motion for appeal and the bond to perfect same were filed within the year after the rendition of the judgment, and that the citation of appeal was served more than one year after the judgment was rendered and signed, but before the transcript of appeal was filed in this court.
[1,2] Article 593 of the Code of Practice provides that:
“No appeal will lie, except as regards minors, after a year has expired, to be computed from the day on which the final judgment was rendered, if the party claiming the same reside in the state, and after two years, if he be absent therefrom.”
In the ease of McCutchen v. Hudson, 61 South. 157, 132 La. 177, recently decided, the motion and order of appeal in which no citation was asked for, taken at a term subse *341 quent to that in which the judgment was rendered and signed, was served after the return day, and after the transcript had been filed in this court. The appeal was dismissed.
The failure of appellant in this case to ask for a citation of appeal to issue at the same time that she filed her motion is not fatal to the appeal under the circumstances presented here. It did not work any injury to appellee, in view of the fact that he was served with a citation before the return day to this court to appear and answer. He had full notice of the appeal, and he was thus summoned to appear and answer here on the return day.
In Barremore v. Bradford, 10 La. 149, we say:
“In this ease appellee moves to dismiss the appeal, on the ground that service of citation was not made within a year after the judgment was rendered. It appears that the appeal was allowed and the bond filed within the year, but the citation was served after it had elapsed, but in time for the term of the court to which the appeal was made returnable, and that a proper return day was fixed by the judge. We think this sufficient, and that the Code does not forbid the service of the citation after the year, if the appeal had been taken in time. The motion is overruled.”
The foregoing decision has been followed in Butte v. Boutte, 30 La. Ann. 177, Ulman v. Briggs, Payne & Co., 32 La. Ann. 657, and Mayville v. Lake Arthur Rice Co., 119 La. 447, 44 South. 260, and the law as laid down in these decisions will be followed in this ease. The motion to dismiss is denied.
On the Merits.
[3] This is a petitory action based upon a patent issued by the United States government, March 19, 1906, to plaintiff to lots Nos. 1 and 2 of section 27, and lots Nos. 1 and 5, and the southeastern portion of lot 4,' of section 28, all in township 4 S., range 1 W. of St. Helena Meridian, Greensburg ¡district of Louisiana, making in all 8486/ioo acres. Plaintiff alleges that the land is in the possession of the defendant; and she asks for possession of the land as owner, for rent at the rate of $4 per acre per annum from the 14th day of July; 1903, when she made application to locate a military warrant on said land.
Defendant answers, alleging title in himself by mesne conveyances, from Colin C. McBae, who purchased said land from the United States government May 20, ' 1836; and he pleads the prescription of 10 and 30 years. There was judgment for the defendant, and plaintiff has appealed.
Plaintiff produces and files in evidence a patent issued by the United States government to her March 19, 1906. Defendant fails to produce a patent from the government of the United States. In Bagnell v. Broderick, 13 Pet. 436, 450 (10 L. Ed. 235), the Supreme Court of the United States say:
“Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title; until its issuance, the fee is in the government, which by the patent, it passes to the grantee; and he is entitled to recover the possession in ejectment.”
Defendant sets up a legal title in himself; but he was permitted without objection on the trial of the cause to offer proof going to show that he had an equity, which entitled him to a conveyance of the legal title from the United States government. If he wanted such relief, he should have prepared his pleadings in view of obtaining it; and it matters not whether he is a defendant or a plaintiff in the cause.
[4] The defense of prescription may be disposed of at this time. It was held in Gibson v. Chouteau, 13 Wall. 92, 20 L. Ed. 534, that the terms of prescription established by state statutes could not be held to constitute *343 a sufficient equity in defendant’s favor to control the legal title subsequently conveyed to others by the patent of the United States, without touching upon the power of the Congress in the disposition of public lands. That power cannot be defeated or obstructed by any occupation of the premises before the issuance of the patent under state legislation in whatever form or tribunal such occupation be asserted. To the same effect are Wilcox v. Jackson, 13 Pet. 498, 516, 10 L. Ed. 264; Irvine v. Marshall, 20 I-Iow. 558, 15 L. Ed. 994; Lindsey v. Miller, 6 Pet. 672, 8 L, Ed., 538.
And in Simmons v. Ogle, 105 U. S. 271, 26 L. Ed. 1087, the court say:
“As regards the weight to be given to the possession of Ogle, it is to be considered that whether he had the equitable title or not neither the statute of limitations nor the equitable doctrine of lapse of time could begin to have effect against any one until Simmons purchased of the United States and obtained his patent in 1874, for up to that time the legal title was undeniably in the United States. * * * No laches could be imputed to Simmons, who brought suit very soon after he received his patent. Nor can laches be imputed to the United States, either as a matter of law or on any moral or equitable principles.”
See, also, Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327.
In th'e case under consideration, the patent was issued by the United States government March 19, 1906, and this suit was filed September 21, 1910. The prescriptive term of 10 years had not run at the time of the institution of the suit. No laches are attributable to this plaintiff, and the pleas of prescription should have been overruled.
[5] The evidence in the record shows conclusively that the title held by plaintiff is perfect; while that held by defendant is imperfect. The latter has only an equitable title at most; and, while it is true that his equitable title could not be arbitrarily destroyed and taken from him by the government or others, yet his pleadings, and the proof offered in support thereof, do not show that he has been fraudulently or arbitrarily deprived of his title; if it can be called an equitable title. Defendant does not attempt to tracé his title to the alleged original entryman, Oolin C. McRae, who he said acquired the land from the government in 1836; he only traces his title back for 30 years, and offers no proof to show that he acquired from McRae either by contract or by inheritance.
Defendant in support of his alleged title offered in evidence a certificate of the register of the United States Land Office, which is as follows:
“Certificate of Register and Receiver U. S. Land Office.
“Department of the Interior, United States Land Office.
“New Orleans, La., Nov. 3, 1910.
“This is to certify that the original tract book on file in the United States Consolidated Land Office situated at New Orleans, Louisiana, shows a pencil notation as to the disposition of fractional section 27, lots 1, 2, 3, 4, and 5 of section. 28, township 4 south, of range 1 west, Greensburg district:
“ ‘Fractional section 27, and lots, 1, 2, 3, 4, and 5 of section 28, 4 S., 1 W., 161.60, $1.25, $202.77%, Colin C. McRae. May 20; 1836. Receipt 627.’
“We further certify that the original tract book was transcribed during the year 1894 and in transcribing the same the above notation was not noted on the new tract book.
“We further certify that on the new tract book on file in this office the following disposition has been made of fractional section 27, and lots 1, 2, 3, 4 and 5, of section 28, township 4 south, of range 1 west, Greensburg district:
“ ‘Lots 1 and 2, section 27, lots 1, 2, 3, 4, and 5. of section 28, 4 S., 1 W., 161.60, located by Mary Haggerty, July 14, 1903. R. & R. #90. Act of March 3,1855. Military Warrant 115,576. Excess Receipt #19679. Patented March 19, 1906. Volume 546, page 413.’
’ “We further certify that the Colin C. McRae remains intact on the old tract book and the Mary Haggerty remains intact on the new transcribed tract book.
“[Signed] Walter L. Cohn, Register.
“[Signed] Chas. C. Palfrey, Receiver.”
He also offered an extract from the United States land entries and selections in the parish of East Baton Rouge, a certified extract of which is on file in the office of that parish. It is as follows:

*345

This last certificate is without date as to the entry of the item thereon, but the certificate of the register April 26, 1890, indicates that it was made before the original tract book was transcribed in the year 1894. It appears from the certificate of the register of the United States Land Office that the entry on the original tract book in connection with the land in question was made in pencil, termed by him a pencil notation, and that this pencil notation was" not transcribed in the new tract book. And we are left absolutely to inference and conjecture as to why the original inscription was made in pencil, and why it was not transcribed on the new tract book, and why a patent was not issued to McRae. Defendant has offered no other evidences of title.
The case of Simmons v. Ogle, 105 U. S. 271, 26 L. Ed. 1087, was very similar to the one under consideration. It was disposed of in the following words, in part:
“If either of these entries had stated the purchase and payment in words, they are open to the weakness which arises from the fact that in all such completed sales two other documents of superior * * force usually attend the sale, one of them invariably, neither of which is here produced or shown ever to have existed. The most conclusive of these is the patent. There is no pretense here that any patent ever issued to any one on Winstanley’s purchase. * * * It is, however, well known that early purchasers of the public lands were careless about their patents. But as a reason for this they attached primary importance to the paper issued when a sale was made, and delivered to the purchaser by the register and receiver of the land office, called a certificate of entry. “This is a paper in two parts, the first of which is signed by the register, giving a description of the land, the amount paid for it, the name of the purchaser, and a statement that on its presentation at the General Band Office a patent would be issued to the purchaser. The second, signed by the receiver, is a simple receipt for the payment of the price, and a description of the land for which it was paid. “The statutes of almost every state and territory in which the public lands have been sold provide for the registration of this instrument, and in all actions concerning title or possession declare it to be prima facie evidence of title. See Hurd’s Rev. Stat. of Illinois, § 31, c. 30, p. 271, and section 20, c. 51, p. 478. In the estimation of the people generally, and in the *347 practice of the courts, it became the efficient substitute or equivalent of the patent, and in regard to millions of acres of land the patent either was never issued, or if issued never delivered, but remains in the local or the General Land Office, subject to the call of the owner.
“In the case before us there is no evidence whatever, except presumption, that this certificate of entry ever had an existence. In the absence of the patent, it is the instrument of all others which is important to produce, or, if it cannot be produced, to account for its loss. * * *
“This would have been sufficient to authorize the introduction of a copy in evidence, if any copy existed. But no copy is produced, for the reason that no human being has been found who can say that any such paper ever existed, or was ever seen by any one. When we consider the number of persons interested in the property through Winstanley, there being several mortgages and intervening conveyances between him and Ogle, and that the certificate of entry, if ever made, could only have been 40 years old when this suit was brought; that many persons must have been alive who had been interested in the title; this total absence of all evidence of its existence, no one ever having seen it, nor any copy of it, nor' any record of it under the Recording Acts of Illinois— the inference that such a paper was made and delivered to Winstanley is very much shaken.
“When we turn to the evidence of defendant, there is much positive testimony to convince us that no such paper was ever delivered, and no such sale ever made.
“There are in pencil mark on the page where the application of Winstanley for this land, numbered 13,164, is found, the following words: ‘13,164. Changed to N. E. % of N. W. %, 9, 2, N. 9, W. 3d.’
“The transactions of the local ■ land offices are forwarded regularly to the General Land Office at Washington, and accurate copies or duplicates are there found of all the transactions in the local offices, and in the present case the original records of the Edwardsville office, long since closed up, are in the General Land Office.”.
After a further discussion of the evidence in that case, the court proceeds:
“If, however, this were ■ not so clear, the appellant here has the legal title and the possession without fraud' or any unfairness. He found the land subject to entry by the records of the land office, and he bought and paid for it, and has the title. In such case the maxim applies in all its force that better is the condition of the defendant. The equities of the parties being equal, the legal title must prevail.
“Instead of the weak case made by appellee, the position of affairs requires him to make clear and satisfactory proof of his superior equity. This he has signally failed to do.”
And the decree was reversed.
Defendant argues that McRae was a bona fide purchaser, and that the government parted with its title when it received his money, and that it had no title to transfer to the plaintiff in this cause in 1903 when the application for the location was made, or in 1906 when the patent was issued to her. With reference to who are bona fide purchasers, the Supreme Court say in Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157:
“In Root v. Shields, 1 Woolw. 340, 348, 363 [Fed. Cas. No. 12,038], Mr. Justice Miller had occasion to consider who were to .be regarded as bona fide purchasers under the pre-emption laws when no patent had been issued by the United States. He said: ‘It is further insisted on behalf of the defendants that they are bona fide purchasers, and that they, as such, are entitled to the protection of the court. I think it pretty clear that some at least of these defendants purchased and paid their money without any knowledge in fact of any defect in the title. Xet they are not bona fide purchasers for a valuable consideration without notice in the sense in which the terms are employed in courts of equity. And this for several reasons. They all purchased before the issue of the patent. The more meritorious purchased after the entry had been assailed and decided against by the Land Office. But that is a circumstance not material to this consideration. Until the issue of the patent the legal title remained in the United States. Had his entry been valid, Shields would have taken only an equity. His grantees took only an equity. They did not acquire the legal title. And in order to establish in himself the character of a bona fide purchaser, so as to be entitled to the protection of chancery, a party must show that in his purchase and by the conveyance to him he acquired the legal title. If he have but an equity, it is overreached by the better equity of his adversary.’
“The rule thus laid was followed by Secretary Teller in Cogswell’s Case, 3 Land Dec. Dep. Int. 23, 28. In Chrisinger’s Case, 4 Land Dec. Dep. Int. 347, 349, Secretary Lamar said: ‘It is insisted by counsel, and ably argued at length, that the assignees of Ohrisinger, being bona fide purchasers after entry, are entitled to intervene and have their interests protected as they took without notice of any defect in the final proof. This proposition is not tenable. It involves the principle that although the claim for the title while in the hands of the entryman is worthless, on account of his failure to comply with the law, such claim may be strengthened and made a matter of absolute right by virtue of a transfer to an innocent *349 purchaser. The converse of this, however, is true. Conceding the right of sale after the issuance of final certificate and prior to patent, the purchaser takes no better claim for title than the entryman has to.confer, and whatever right is thus acquired is subject to the subsequent action of the Land Department. Myers v. Croft, 13 Wall. 291 [20 L. Ed. 562]; Margaret Kissack, 2 Copp’s Land Laws, 421. Again, the Department must deal directly with its own vendees, with the persons with whom it contracts. It cannot undertake to follow the transfers of the grantees, and to settle questions that may arise upon such transfers, but must leave such matter for determination in the courts.’
“So in Smith v. Custer, 8 Land Dec. Dep. Int. 269, 278, Secretary Yilas said: ‘The preemption purchaser takes by his final proofs and payment, and his certificate of purchase, only a right to a patent for the public lands in ease the facts shall be found by the General Land Office and the Interior Department upon appeal to warrant the issuance of it. Whatever claim to patent he possesses by virtue of his payment and certificate is dependent upon the action of the Department and its future finding of the existence of the conditions, and his compliance in fact with the prerequisites, prescribed by law to the rightful acquisition of the public land he claims. This being so, it is plain that the purchaser can acquire from the entryman no greater estate or right than the entryman possesses. The purchaser is chargeable with knowledge of the law, which includes knowledge of this law; and is chargeable with knowledge of the state of the title which he buys, in so far, at least, as that the legal title remains in the United States, subject to the necessary inquiry and determination by the land office and Department upon which a patent may issue. He is not an ‘innocent purchaser,’ so far as there may exist reasons why that patent should not issue. He buys subject to the risk of the consequences of the inquiry depending in the Department. He 'buys a title sub judiee. At the most, it is but an equitable title; the legal title being in the government. It is a familiar rule that the purchaser of an equitable title takes and holds it subject to all equities upon it in the hands of the vendor, and has no better standing than he. Boone v. Chiles, 10 Pet. 177 [9 L. Ed. 388]; Root v. Shields, 1 Woodw. 340 [Fed. Cas. No. 12,038].’
“These principles were applied by the Land Department in Travelers’ Insurance Co., 9 Land Dec. Dep. Int. 316, 320, 321.
“Again, in United States v. Allard, 14 Land Dec. Dep. Int. 392, 405, 406, the question was fully examined by Secretary Noble in the light of the authorities, and his conclusion was thus stated: ‘A bona fide purchaser of land is one
who is the purchaser of the legal title, or estate ; and a purchaser of a mere equity is not embraced in the definition. Boone v. Chiles, 10 Pet. 177 [9 L. Ed. 388]; 3 Op. Attys. Gen. 664.’ ”
We have before remarked that the pleadings and the proof in this case do no't tend to show why the entry of McRae was made in pencil, or why it was not transcribed in the new tract book, or why a patent was not issued to him. ’ There is nothing to show whether the entry was canceled or not. It has been judicially settled that the Land Department of the government has the power and authority to cancel and annul an entry of public land when its officers are convinced upon a proper showing that the same was fraudulently made; (2) that an entryman upon the public land only secures a vested interest in the land when he has lawfully entered upon and applied for the same, and in all respects complied with the requirements of the law; (3) that the Land Department has control over the disposition of public lands until a patent has been issued therefor and accepted by the patentee; and (4)‘ that redress can always be had in the courts where the officers of the land department have withheld from a pre-emptioner his rights, where they have misconstrued the law, or where any fraud or deception has been practiced which affected their judgment and decision. Hawley v. Diller, 178 U. S. 476, 490, 20 Sup. Ct. 986, 44 L. Ed. 1157. But, until the evidence shows that the Land Department has withheld from this defendant his rights by fraud, deception, or misconstruction of the law, we are constrained to uphold the legal title issued by the government to the plaintiff.
With reference to the claim of plaintiff for rent of the land, the evidence shows that about 25 acres are being cultivated, and that the balance is in pasture; that the cultivated lands are worth about |2 an acre, and that the pasture lands are worth about $1 an acre.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed. It is further ordered that the motion to dismiss the appeal *351 be denied, and that.there be judgment in favor of plaintiff and against defendant, recognizing her as the true and lawful owner of' the property described in her. petition, and as such entitled to the full, peaceable, and undisturbed possession thereof, and ordering defendant to deliver possession of said property to plaintiff, and that he be further condemned to pay to her rent at the rate of $110 per annum from March 13, 1906, until the land is vacated by him and delivered to her. It is further ordered that defendant pay costs in both courts.
MONROE, J., dissents, being of opinion that the appeal should be dismissed.