# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-417


**CYNTHIA HILL DUPONT, BRIDGETTE C. MARCOTTE
& JOHN HILL**

**VERSUS**

**THE STATE OF LOUISIANA, DEPARTMENT OF ADMINISTRATION,
OFFICE OF STATE LANDS, THROUGH THE OFFICE OF THE
ATTORNEY GENERAL**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2016-2687-A
HONORABLE KERRY L. SPRUILL, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, Billy Howard Ezell, D. Kent Savoie, and Van H. Kyzar, Judges.


**AFFIRMED.**


**Amy, J., dissents and assigns reasons.**

**Kyzar, J., concurs in the result and assigns reasons.**

**Michael J. Uter**
**300 Main St., Suite 301**
**Baton Rouge, LA 70802**
**(225) 381-8242**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **John Hill**
    **Cynthia Hill Dupont**
    **Bridgette C. Marcotte**

**Harry J. Vorhoff**
**Ryan M. Seidemann**
**Assistant Attorneys General**
**1885 North Third Street**
**Post Office Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **The State of Louisiana, Division of Adminstration, Office of State Lands,**
    **Through the Office of the Attorney General**

**Jenny Donaghey-Beckham**
**Riddle & Donaghey, LLC**
**Post Office Box 608**
**Marksville, LA 71351**
**(318) 240-7217**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Stephen Mayeux**

**SAVOIE, Judge.**

Plaintiffs Cynthia Hill Dupont, Bridgette C. Marcotte, and John Hill claim ownership of a certain tract of land over which the State of Louisiana also claims ownership. After a trial, the trial court ultimately found ownership and superior title belonged to the plaintiffs. The State now appeals. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Upon learning that a tract of immovable property over which the family claims ownership was scheduled for a Sheriff's Sale, the plaintiffs filed a Petition for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, and for Declaratory Judgment against the State of Louisiana, Department of Administration, Office of State Lands.[1] The plaintiffs asserted that they own the land in question with the first link in their title tracing back to an 1833 patent from the United States to Francis M. Henderson. The plaintiffs presented certified documents from the Avoyelles Parish Clerk of Court, which they explained demonstrate the various transactions by which title to the property has changed hands since 1833 and by which the plaintiffs acquired the property. The plaintiffs further explained that they "have been in continuous actual, open, and peaceable possession of [the property] as owners since they obtained it" and provided a certified tax certificate to demonstrate that they paid the State and Parish taxes assessed on the property for the preceding three years.

In response to the petition, the trial court granted a temporary restraining order. Thereafter, the parties entered a consent judgment, which granted a preliminary injunction on the same grounds as the existing temporary restraining order pending

---

[1] The opening paragraph of the petition states that it is "[t]he petition of Cynthia Hill Dupont, Joey L. Hill, Alexis Hill Terrell and John Hill[.]" However, paragraph "1." of the petition provides that the "[p]laintiffs are Cynthia Hill Dupont, Bridgette C. Marcotte, and John Hill[.]" Additionally, the judgment of the trial court states: "**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the claim of the Plaintiffs herein, Cynthia Hill Dupont, Bridgette C. Marcotte and John Hill is hereby confirmed and that they are adjudged to be the owners of the property hereinabove described[.]" Accordingly, reference hereinafter to the "plaintiffs" will be to Cynthia Hill Dupont, Bridgette C. Marcotte, and John Hill.

resolution of the issue of a permanent injunction at trial. Subsequently, Stephen Mayeux petitioned to intervene "as a property owner, adjoining property of plaintiffs, whose interest in said property hs [sic] been affected by the same demands made by the State of Louisiana unto plaintiffs . . . in mover's property described as a certain 3 acre, more or less, tract or parcel of land[.]" The trial court permitted Mr. Mayeux to intervene as a party plaintiff, and the matter was ultimately set for a bench trial. The State filed an answer, which stated in part that the Petition "erroneously claims title to the subject property." In the answer, the State prayed for a judgment dismissing the plaintiffs' claims and declaring title and ownership of the land in favor of the State.

In their pre-trial brief, the plaintiffs and the intervenor (hereinafter referred to collectively as the "plaintiffs") reiterated their claim that their chain of title dates back to an 1833 patent issued from the United States to Francis M. Henderson. In support, their exhibits included excerpts from the record book "General Government 2 Parish of Avoyelles[.]" In particular, the plaintiffs explain that "[t]he first transaction of record is from the United States of America to Frances [sic] M. Henderson dated November 19, 1833,, [sic] bearing Certificate No. 687, conveying to him the NW4 of the NW4 of Section 36, T3N, R5E, Avoyelles Parish, Louisiana, containing 38.42 acres."[2] The plaintiffs again described and provided documentation for the various transactions that led to their acquisition of the property.

In its pre-trial brief, the State first disputed the plaintiffs' ownership and chain of title by providing a copy of excerpts from the United States Tract Book. The State asserted that "the alleged conveyance to Francis M. Henderson was posted in error" because it is accompanied by the notation "Posted in Error see T3NR5W, Vol 56, page 148[.]" The State suggested that "[t]he error appears to have emanated from a mistake between two persons with the same surname, Henderson." The State

---

[2] In explaining the transaction, the plaintiffs describe the tract as "the NW4 of the NW4[.]" However, the exhibit to which the plaintiffs refer lists the tract as "N.W. ¼ N.W. ¼[.]"

continued that "[a] review of that latterly-referenced page shows that the NW4 of the NW4 of Section 36 of T3N, R5W was conveyed to Robert M. Henderson."[3] Like the Avoyelles Parish tract book presented by the plaintiffs, the entry bears a "DATE OF SALE" of November 19, 1833, and similarly shows "687" as the "NUMBER OF RECEIPT AND CERTIFICATE OF PURCHASE[.]" In their reply brief, the plaintiffs explained that the "Posted in Error" notation was done "without making the record owners of the property party to the process" and questioned the "due process owed to" them.

The State further presented a certified copy of Patent Number 1238658, in which the United States conveyed the subject tract of land[4] to the State of Louisiana on August 31, 1965. Regarding the patent introduced by the State, the plaintiffs asserted in their pre-trial brief that, when there is "a conflict of two entities or persons being granted patents on the exact same piece of property, . . . the first patent would have to prevail over the second, regardless of who [sic] the second patent was made to." However, as noted by the State, the plaintiffs did not provide the purported patent from the United States of America to Francis M. Henderson upon which they base their claim.

At trial, each party stipulated to the authenticity of the other party's evidence. The trial court concluded that the plaintiffs are the owners of the subject property and have a claim of title superior to that of the State. In oral reasons for judgment, the trial court explained:

> I would be very remiss if I said . . . 1965 patent supreme and that ends my inquiry. I have to look to the entire facts of this case.
>
> . . . .
>
> What is of great concern for this court is that . . . all of these years starting in 1833 through present this track [sic] that's in dispute drew revenue for the State of Louisiana in the form of taxes . . . I just think that under the circumstances equity requires this court to

---

[3] In explaining the transaction, the State describes the tract as "the NW4 of the NW4[.]" However, the exhibit to which the State refers lists the tract as "NW$^4$ NW$^4$[.]"

[4] The patent also conveyed four other tracts of land.

3

exercise it's [sic] authority and to find that equitable title and superior title exists in the plaintiff's [sic] title in the chain that they've presented to this court. I find them to be in good faith, present possession, and ownership of a title that they possessed which reflects in this Court's eye as being from patent through a Mr. Henderson starting in 1833. I find that the issue done by the state is done without due process of law, without any notice to the plaintiff [sic], those who were in possession who have, where I consider to be very valid claim to the property[.]

Additionally, the trial court cited case law for the proposition that "if the thing granted was not in the grantor no right has the grantee" and for the proposition that "cancellation without notice to the owner of the land . . . was without due process and was invalid."

The State appeals, asserting as error that:

1.  The district court erred in finding that the Appellees proved better title to the disputed property than the State.

    a. The district court erred in not finding the State's U.S. patent to be the superior and conclusive evidence of legal title.

    b. The district court erred in not accepting the contents of the U.S. tract book for the facts stated therein given the absence of any argument or evidence of fraud or abuse.

    c. The district court erred in finding that the Appellees held "equitable title" vis-à-vis the State.

2.  The district court erred in making legal conclusions contrary to the controlling jurisprudence.

3.  The district court erred in finding that the U.S. government's recognition of an erroneous posting in its tract book and its issuance of a patent to the State violated the Appellees' due process.

## DISCUSSION

Whether the plaintiffs' copies of the Avoyelles Parish record book or the State's copy of Patent Number 1238658 is superior and conclusive evidence of title presents only a question of law. Therefore, we review this matter *de novo*. *South Lafourche Levee District v. Jarreau*, 16-788 (La. 3/31/17), 217 So.3d 298, *cert. denied*, 138 S. Ct. 381.

4

The public records doctrine expresses a public policy that interest in real estate must be recorded in order to affect third persons. Louisiana Civil Code Article 3338 provides, in pertinent part:

> The rights and obligations established or created by the following written instruments are without effect as to a third person unless the instrument is registered by recording it in the appropriate mortgage or conveyance records pursuant to the provisions of this Title:
>
> (1) An instrument that transfers an immovable or establishes a real right in or over an immovable.

Francis M. Henderson acquired his title from the United States of America in 1833 as evidenced by a patent recorded in the tract book for Avoyelles Parish at the time. For the next 131 years, this ownership, through chain of title, was uninterrupted. In 1964, unbeknownst to the successors of Francis M. Henderson, the United States Tract Book was altered. A line was placed through the name of Francis M. Henderson, referencing the land at issue, with the inscription "Posted in Error" added. One year later, in 1965, the State of Louisiana applied for and received a patent deed from the United States, which included the same tract of land. It is from this patent that the State of Louisiana claims ownership of the property. However, this patent was never recorded in Avoyelles Parish, where the land is situated. According to La.Civ.Code art. 3346:

> A. An instrument creating, establishing, or relating to a mortgage or privilege over an immovable, or the pledge of the lessor's rights in the lease of an immovable and its rents, is recorded in the mortgage records of the parish in which the immovable is located. All other instruments are recorded in the conveyance records of that parish.

Because the patent was not properly recorded in Avoyelles Parish, the successors-in-title of Francis M. Henderson were unaware of the State of Louisiana's claim on the property. In fact, they continued to possess and pay the taxes on the property until such time as the property was scheduled for Sheriff's Sale. The State never asserted its claim during that time. Rather, the State now asks this court to

deem it the owner of the property, even though it never' asserted its rights and benefitted from the collection of taxes.

Further, in 1964, when a line was placed through the name of Francis M. Henderson, no document was attached to the United States Tract Book explaining the reason behind the error. More importantly, no notice was given to the successors-in-title of Francis M. Henderson informing them that their title to the land was voided by the United States government. The successors-in-title were not given a hearing in order to refute whatever evidence the United States may have had to substantiate its claim. Amendment V of the United States Constitution guarantees that "[n]o person shall. . . .be deprived of life, liberty, or property, without due process of law[.]" Likewise, La. Const. Art. 1, § 2 provides, "[n]o person shall be deprived of life, liberty, or property, except by due process of law." This tenet is a cornerstone of our democracy.

The State of Louisiana would like this court to declare it the owner of the tract of land based on the patent that was issued to the State by the United States in 1965. It is our opinion that this patent was issued in error because the previous title holders, the successors-in-title of Francis M. Henderson, were not afforded due process when their property was taken from them by the United States government. As such, they were still the legal title holders of the property in question.

In *Albritton v. Shaw*, 148 La. 427, 87 So. 32 (1921), the state supreme court was faced with the issue of competing claims over a certain tract of land. The court opined:

> "There are cases,' said Chief Justice Marshall, 'in which a grant is absolutely void; as where the state has no title to the thing granted, or when the officer had no authority to issue the grant. In such cases the validity of the grant is necessarily examinable at law.' Polk's Lessee v. Wendall, 9 Cranch, 87, 99. Indeed, it may be said to be common knowledge that patents of the United States for lands which they had previously granted, reserved for sale, or appropriated, are void. Easton v. Salisbury, 21 How. 426; Reichart v. Felps, 6 Wall. 150; Best v. Polk, 18 Wall. 112. It would be a most extraordinary doctrine if the holder of a

conveyance of land from a state were precluded from establishing his title simply because the United States may have subsequently conveyed the land to another, and especially from showing that years before they had granted the property to the state, and thus were without title at the time of their subsequent conveyance. As this court said in New Orleans v. United States, 10 Pet. 662, 731: *'It would be a dangerous doctrine to consider the issuing of a grant as conclusive evidence of right in the power which issued it. On its face, it is conclusive, and cannot be controverted; but if the thing granted was not in the grantor, no right passes to the grantee.* A grant has been frequently issued by the United States for land which had been previously granted, and the second grant has been held to be inoperative."

*Id.* at 436 (emphasis added).

We agree. It would be a dangerous doctrine indeed. In the present case, Francis M. Henderson and his successors continually possessed and paid property taxes on the tract of land for nearly two hundred years. It would be inequitable and unconscionable to void their title and allow the State's patent to stand based on the facts before us. For the foregoing reasons, we find the plaintiffs to be the owners of the tract of land at issue.

### DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assessed to the State of Louisiana.

**AFFIRMED.**

NUMBER 17-417

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CYNTHIA HILL DUPONT, BRIDGETTE C. MARCOTTE & JOHN HILL

VERSUS

THE STATE OF LOUISIANA, DEPARTMENT OF ADMINISTRATION, OFFICE OF STATE LANDS, THROUGH THE OFFICE OF THE ATTORNEY GENERAL

AMY, J., dissenting.

I respectfully dissent as I find that the State of Louisiana has demonstrated superior and conclusive evidence of title to the subject property.

Critically, the State is the only party that has produced a United States patent. Both the Louisiana Supreme Court and the United States Supreme Court have declared the primacy of that instrument in evidencing legal title, providing that: "'Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title.'" *Haggerty v. Annison*, 133 La. 338, 342, 62 So. 946, 947 (1913) (quoting *Bagnell v. Broderick*, 38 U.S. 436, 450 (1839)).

By contrast, the plaintiffs have produced no patent in support of their claim. Rather, they rely on excerpts from the Avoyelles Parish record book which *reference* an earlier issued patent. However, no actual patent was recorded in the Avoyelles Parish tract book and the reference entry has been called into question by a notation of error. Under these facts, I do not see how the plaintiffs can be viewed as having demonstrated their ownership of the property. Rather, they countered the superior and conclusive evidence of the State's ownership via patent

with only a reference notation of a patent's existence which has a countervailing notation of error.

Certainly, the Louisiana Supreme Court has explained that "even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, *if it be such evidence as by its nature is capable of showing a want of authority for its issue*." *Albritton v. Shaw*, 148 La. 427, 437, 87 So. 32, 36 (1920) (emphasis added). I do not find that, given the primacy accorded the patent, the plaintiffs' mere references to an alleged conveyance in the Avoyelles Parish tract book demonstrate that the State's patent was issued without authority. Additionally, the United States Tract Book contains a notation that the alleged conveyance relied upon by the plaintiffs was "posted" in error. The lack of an actual patent, coupled with the error notation, undermines the position that a patent was ever issued to Francis M. Henderson. Absent such a conveyance it cannot be said, considering the record before us, that title was ever conveyed.

Furthermore, I note that the majority opinion also references equitable concerns suggestive of prescription, observing that the plaintiffs and their ancestors in title have continually possessed the tract of land and paid property taxes for almost two hundred years. However, the record linearly demonstrates that, despite such possession, the tract of land was owned by the United States until 1965 when title was transferred to the State. The supreme court has explained that "the power of the Congress in the disposition of public lands . . . cannot be defeated or obstructed by any occupation of the premises before the issuance of the patent[.]" *Haggerty*, 62 So. at 947. *See, e.g.,* 28 U.S.C. § 2409a (which permits lawsuits against the federal government for adjudication of a "disputed title to real property in which the United States claims an interest …[,]" but which provides further that "[n]othing in this section shall be construed to permit suits against the United

2

States based upon adverse possession."); *U.S. v. Pappas*, 814 F.2d 1342, 1343 n.3 (9th Cir. 1987) (explaining that "One cannot gain title to land of the United States through adverse possession.").

To the extent the plaintiffs cite to their possession of the property *after* its conveyance to the State in 1965, La.Const. art. 12, § 13 declares that "[p]rescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." More particularly, La.Const. art. 9, § 4 provides, in pertinent part, that: "Lands and mineral interests of the state . . . shall not be lost by prescription" except in narrow circumstances. The situation at hand is not encompassed by any of the limited exceptions to the general rule that prescription does not run against the State. In light of the foregoing constitutional principles—and although I am mindful of the circumstances surrounding the plaintiffs' claim—I find no basis in law for the suggestion that recognition of the State's superior title must, or even can, yield to equitable considerations of possession.

For these reasons, I respectfully dissent.

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-417

CYNTHIA HILL DUPONT, BRIDGETTE C. MARCOTTE
& JOHN HILL

VERSUS

THE STATE OF LOUISIANA, DEPARTMENT OF ADMINISTRATION,
OFFICE OF STATE LANDS, THROUGH THE OFFICE OF THE
ATTORNEY GENERAL

KYZAR, J., CONCURS AND ASSIGNS REASONS

The plaintiffs herein sought a declaratory judgment declaring their title to certain Avoyelles Parish immovable property to be valid title and thus recognizing their ownership of the disputed tract of land. Louisiana Code of Civil Procedure article 3654 discusses declaratory judgments and provides, in pertinent part, that:

"When the issue of ownership of immovable property . . . is presented in an action for a declaratory judgment, . . . the court shall render judgment in favor of the party:

(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action[.]"

Louisiana Code of Civil Procedure article 3655 states that a "possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed[.]"

The State answered, asserting its title via a patent from the United States and prayed for judgment "declaring valid title and ownership of the subject property to be in favor of the State." Louisiana Code of Civil Procedure article 3657 provides, in pertinent part, that when "the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory

action, and judicially confesses the possession of the plaintiff in the possessory action." Thus, the suit, which began as a declaratory judgment action, was converted into a petitory action by the State's answer and assertion.

If a plaintiff in a petitory action wishes to "obtain a judgment recognizing his ownership of immovable property or real right therein," La.Code Civ.P. art. 3653 requires that the plaintiff "[p]rove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof." Therefore, the question in this instance is which party has proved better title.

In support of their claim, the plaintiffs introduced records establishing their chain of title, which dates back to an 1833 patent issued from the United States to Francis M. Henderson. Their exhibits included excerpts from the record book "General Government 2 Parish of Avoyelles[.]" The plaintiffs asserted that "[t]he first transaction of record is from the United States of America to Frances [sic] M. Henderson dated November 19, 1833,, [sic] bearing Certificate No. 687, conveying to him the NW4 of the NW4 of Section 36, T3N, R5E, Avoyelles Parish, Louisiana, containing 38.42 acres." The plaintiffs further provided other documentation establishing the chain of title emanating from the original transaction from the United States to Henderson. However, plaintiffs could not produce the physical patent from the United States to Francis M. Henderson. On the other hand, the State relies on a patent from the United States, Patent Number 1238658, by which the United States purportedly conveyed the land in dispute to the State of Louisiana in 1965.

It is recognized that "in reference to the public lands," Congress "declares the patent the superior and conclusive evidence of legal title[.]" *Haggerty v. Annison*, 133 La. 338, 342, 62 So. 946, 947 (1913) (quoting *Bagnell v. Broderick*, 38 U.S. 436, 450 (1839)). However, this is not the end of the inquiry.

2

'A patent,' says the court in *United States v. Stone* (2 Wall. 525), 'is the highest evidence of title, and is conclusive against the government and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. In England, this was originally done by *scire facias*; but a bill in chancery is found a more convenient remedy.' See also *Hughes v. United States*, 4 Wall. 232; S. C. 11 How. 552.

*Moore v. Robbins*, 96 U.S. 530, 533 (1877).

It has been argued that the first patent appropriates the land, and extinguishes all prior claims of inferior dignity. But this view is not sustainable. The issuing of a patent is a ministerial act, which must be performed according to law. A patent is utterly void and inoperative which is issued for land that had been previously patented to another individual. The fee having been vested in the patentee by the first patent, the record could convey no right. It is true a patent possesses the highest verity. It cannot be contradicted or explained by parol; but if it has been fraudulently obtained, or issued against law, it is void. It would be a most dangerous principle to hold, that a patent should carry the legal title, though obtained fraudulently, or against law. Fraud vitiates all transactions. It makes void a judgment, which is a much more solemn act than the issuing of a patent. The patent of the defendants having been for land reserved from such appropriation, is void; and also the survey of Coontz, so far as either conflicts with the plaintiff's title and this question, this court can decide."

*Foley v. Harrison*, 5 La.Ann. 75, 81 (1850), *affirmed*, 56 U.S. 433 (1853) (citations omitted).

The plaintiffs' chain of title does purport to emanate from at least the reference to a patent issued or which was supposed to issue from the United States. Despite this reference in the tract book, another patent was issued in 1965. The use of Tract Books, as to support the validity of land titles, has a long history in this country.

The first tract books were prepared in about 1800. Then, as now, the tract books were organized by State or territory, meridian, township, range, section, and subdivision and were intended to provide a permanent index type record, originally of homestead entries, but later of all transactions affecting surveyed public lands. One set of tract books is maintained in Washington and another in the appropriate local land office.

The tract book entries provide a record of patents, grants, leases, permits, licenses, rights of way, special uses, and applications for any of these. The entries also include references to proclamations and

3

orders for withdrawals, reservations, classifications, and appropriations of public lands, and to revocations, restorations, suspensions, amendments, and modifications of the proclamations and orders.

ACQUIRING FEDERAL OIL AND GAS LEASES - SOME PROBLEMS AND SUGGESTED SOLUTIONS, 9 RMMLF-INST 6 (1964) (footnotes omitted).

It is undisputed that Francis M. Henderson acquired his title from the United States of America and, as recognized by the majority herein, for "the next 131 years, this ownership, through chain of title, was uninterrupted." However, without notice to the successors of Francis M. Henderson, the United States Tract Book was altered in 1964, with a line drawn through the name of Francis M. Henderson and the inscription "Posted in Error" added. No document was attached to the United States Tract Book explaining the reason behind the error, nor was there any reference to any documentation providing authority for the tract book entry to be altered. One year later, the State of Louisiana applied for and received a patent deed from the United States. However, this patent was never recorded in Avoyelles Parish where the land in question is situated. The State applied for the patent despite the fact that the plaintiffs and their ancestors in title had paid the taxes on the property for decades and continued to do so until such time as the property was scheduled for Sheriff's Sale.

The trial court's reasons for judgment in favor of the plaintiffs do note, in part, the equitable doctrine of prescription, as shown in its oral reasons wherein the trial court expressed that the tract of land "drew revenue for the State of Louisiana in the form of taxes" while also mentioning the plaintiffs' "equitable title" and "good faith, present possession[.]" It is undisputed that the plaintiffs and their ancestors in title continuously possessed the property for decades, even prior to the State's purported acquisition of the property per the 1965 patent. Indeed, it is noted that had this been a case involving two individuals, instead of one individual

4

versus the State, acquisitive prescription would be a direct issue and a prescriptive title could prevail. The State, on the other hand, asserts that "[p]rescription shall not run against the [S]tate in any civil matter, unless otherwise provided in this constitution or expressly by law", citing La.Const. art. 12, § 13. It then notes La.Const. art. 9, § 4, which provides, in part, that "Lands and mineral interests of the state . . . shall not be lost by prescription" except in certain, narrow circumstances. However, it should be noted that plaintiffs' open possession of the property for at least 30 years, and certainly for 10 years, had long been accomplished prior to the State's attempted acquisition of the property in 1965. Thus, prescription did not "run against" the State; it had already tolled before the State's involvement with the land. What is most pertinent to this analysis is the silence of the State for the many, many years after acquiring the patent and its failing to provide any notice to the plaintiffs of its claim of adverse ownership of this property. Indeed, the acquisition itself, in light of the known fact that someone was claiming ownership of the property by the payment of taxes, makes the acquisition of the patent questionable without at least some effort to notify the taxpayers. Thus, under the circumstances of this particular case, the trial court had the authority to disregard the patent title asserted by the State.

> **The power of a court of equity, by its decree to vacate and annul the patent, under the circumstances of this case, is undoubted.** Relief, when deeds or other instruments are executed by mistake or inadvertence of agents, as well as upon false suggestions, is a common head of equity jurisdiction.
>
> The patentee cannot complain of the proceeding, for the open, notorious, and exclusive possession of the premises, by the parties claiming under Goodbee, when the patentee made his entry and received the patent, was sufficient to put him upon inquiry as to the interests, legal or equitable, held by them; and if he neglected to make the inquiry, he is not entitled to any greater consideration than if he had made it and ascertained the actual facts of the case.

*Hughes v. United States*, 71 U.S. 232, 236 (1866) (emphasis added).

5

As such, I agree with the majority in the affirmation of the judgment of the trial court under the particular and limited facts of this unfortunate case.