AMY, J., dissenting.
*512 I respectfully dissent as I find that the State of Louisiana has demonstrated superior and conclusive evidence of title to the subject property.
Critically, the State is the only party that has produced a United States patent. Both the Louisiana Supreme Court and the United States Supreme Court have declared the primacy of that instrument in evidencing legal title, providing that: " 'Congress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the federal government, in reference to the public lands, declares the patent the superior and conclusive evidence of legal title.' " Haggerty v. Annison , 133 La. 338, 342, 62 So. 946, 947 (1913) (quoting Bagnell v. Broderick , 38 U.S. (13 Pet.) 436, 450, 10 L.Ed. 235 (1839) ).
By contrast, the plaintiffs have produced no patent in support of their claim. Rather, they rely on excerpts from the Avoyelles Parish record book which reference an earlier issued patent. However, no actual patent was recorded in the Avoyelles Parish tract book and the reference entry has been called into question by a notation of error. Under these facts, I do not see how the plaintiffs can be viewed as having demonstrated their ownership of the property. Rather, they countered the superior and conclusive evidence of the State's ownership via patent with only a reference notation of a patent's existence which has a countervailing notation of error.
Certainly, the Louisiana Supreme Court has explained that "even a patent from the government of the United States, issued with all the forms of law, may be shown to be void by extrinsic evidence, if it be such evidence as by its nature is capable of showing a want of authority for its issue ." Albritton v. Shaw , 148 La. 427, 437, 87 So. 32, 36 (1920) (emphasis added). I do not find that, given the primacy accorded the patent, the plaintiffs' mere references to an alleged conveyance in the Avoyelles Parish tract book demonstrate that the State's patent was issued without authority. Additionally, the United States Tract Book contains a notation that the alleged conveyance relied upon by the plaintiffs was "posted" in error. The lack of an actual patent, coupled with the error notation, undermines the position that a patent was ever issued to Francis M. Henderson. Absent such a conveyance it cannot be said, considering the record before us, that title was ever conveyed.
Furthermore, I note that the majority opinion also references equitable concerns suggestive of prescription, observing that the plaintiffs and their ancestors in title have continually possessed the tract of land and paid property taxes for almost two hundred years. However, the record linearly demonstrates that, despite such possession, the tract of land was owned by the United States until 1965 when title was transferred to the State. The supreme court has explained that "the power of the Congress in the disposition of public lands ... cannot be defeated or obstructed by any occupation of the premises before the issuance of the patent[.]" Haggerty , 62 So. at 947. See, e.g., 28 U.S.C. § 2409a (which permits lawsuits against the federal government for adjudication of a "disputed title to real property in which the United States claims an interest ...[,]" but which provides further that "[n]othing in this section shall be construed to permit suits against the United States based upon adverse possession."); U.S. v. Pappas , 814 F.2d 1342, 1343 n.3 (9th Cir. 1987) (explaining that "One cannot gain title to land of the United States through adverse possession.").
*513 To the extent the plaintiffs cite to their possession of the property after its conveyance to the State in 1965, La.Const. art. 12, § 13 declares that "[p]rescription shall not run against the state in any civil matter, unless otherwise provided in this constitution or expressly by law." More particularly, La.Const. art. 9, § 4 provides, in pertinent part, that: "Lands and mineral interests of the state ... shall not be lost by prescription" except in narrow circumstances. The situation at hand is not encompassed by any of the limited exceptions to the general rule that prescription does not run against the State. In light of the foregoing constitutional principles-and although I am mindful of the circumstances surrounding the plaintiffs' claim-I find no basis in law for the suggestion that recognition of the State's superior title must, or even can, yield to equitable considerations of possession.
For these reasons, I respectfully dissent.
KYZAR, J., CONCURS AND ASSIGNS REASONS
The plaintiffs herein sought a declaratory judgment declaring their title to certain Avoyelles Parish immovable property to be valid title and thus recognizing their ownership of the disputed tract of land. Louisiana Code of Civil Procedure article 3654 discusses declaratory judgments and provides, in pertinent part, that:
"When the issue of ownership of immovable property ... is presented in an action for a declaratory judgment, ... the court shall render judgment in favor of the party:
(1) Who would be entitled to the possession of the immovable property or real right therein in a possessory action[.]"
Louisiana Code of Civil Procedure article 3655 states that a "possessory action is one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed[.]"
The State answered, asserting its title via a patent from the United States and prayed for judgment "declaring valid title and ownership of the subject property to be in favor of the State." Louisiana Code of Civil Procedure article 3657 provides, in pertinent part, that when "the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action." Thus, the suit, which began as a declaratory judgment action, was converted into a petitory action by the State's answer and assertion.
If a plaintiff in a petitory action wishes to "obtain a judgment recognizing his ownership of immovable property or real right therein," La.Code Civ.P. art. 3653 requires that the plaintiff "[p]rove a better title thereto than the defendant, if the court finds that the latter is not in possession thereof." Therefore, the question in this instance is which party has proved better title.
In support of their claim, the plaintiffs introduced records establishing their chain of title, which dates back to an 1833 patent issued from the United States to Francis M. Henderson. Their exhibits included excerpts from the record book "General Government 2 Parish of Avoyelles[.]" The plaintiffs asserted that "[t]he first transaction of record is from the United States of America to Frances [sic] M. Henderson dated November 19, 1833, [sic] bearing Certificate No. 687, conveying to him the NW4 of the NW4 of Section 36, T3N, R5E, Avoyelles Parish, Louisiana, containing 38.42 acres." The plaintiffs further provided other documentation establishing the *514 chain of title emanating from the original transaction from the United States to Henderson. However, plaintiffs could not produce the physical patent from the United States to Francis M. Henderson. On the other hand, the State relies on a patent from the United States, Patent Number 1238658, by which the United States purportedly conveyed the land in dispute to the State of Louisiana in 1965.
It is recognized that "in reference to the public lands," Congress "declares the patent the superior and conclusive evidence of legal title[.]" Haggerty v. Annison , 133 La. 338, 342, 62 So. 946, 947 (1913) (quoting Bagnell v. Broderick , 38 U.S. (13 Pet.) 436, 450, 10 L.Ed. 235 (1839) ). However, this is not the end of the inquiry.
'A patent,' says the court in United States v. Stone ( [69 U.S.] (2 Wall.) 525[ 17 L.Ed. 765 (1864) ] ), 'is the highest evidence of title, and is conclusive against the government and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal. In England, this was originally done by scire facias ; but a bill in chancery is found a more convenient remedy.' See also Hughes v. United States , [71 U.S.] (4 Wall.) 232[ 18 L.Ed. 303 (1866) ] ; S.C. [52 U.S.] (11 How.) 552[ 13 L.Ed. 809 (1850) ].
Moore v. Robbins , 96 U.S. 530, 533, 24 L.Ed. 848 (1877).
It has been argued that the first patent appropriates the land, and extinguishes all prior claims of inferior dignity. But this view is not sustainable. The issuing of a patent is a ministerial act, which must be performed according to law. A patent is utterly void and inoperative which is issued for land that had been previously patented to another individual. The fee having been vested in the patentee by the first patent, the record could convey no right. It is true a patent possesses the highest verity. It cannot be contradicted or explained by parol; but if it has been fraudulently obtained, or issued against law, it is void. It would be a most dangerous principle to hold, that a patent should carry the legal title, though obtained fraudulently, or against law. Fraud vitiates all transactions. It makes void a judgment, which is a much more solemn act than the issuing of a patent. The patent of the defendants having been for land reserved from such appropriation, is void; and also the survey of Coontz, so far as either conflicts with the plaintiff's title and this question, this court can decide."
Foley v. Harrison , 5 La.Ann. 75, 81 (1850), affirmed , 56 U.S. (15 How.) 433, 14 L.Ed. 761 (1853) (citations omitted).
The plaintiffs' chain of title does purport to emanate from at least the reference to a patent issued or which was supposed to issue from the United States. Despite this reference in the tract book, another patent was issued in 1965. The use of Tract Books, as to support the validity of land titles, has a long history in this country.
The first tract books were prepared in about 1800. Then, as now, the tract books were organized by State or territory, meridian, township, range, section, and subdivision and were intended to provide a permanent index type record, originally of homestead entries, but later of all transactions affecting surveyed public lands. One set of tract books is maintained in Washington and another in the appropriate local land office.
The tract book entries provide a record of patents, grants, leases, permits, licenses, rights of way, special uses, and applications for any of these. The entries also include references to proclamations and orders for withdrawals, reservations, classifications, and appropriations of public lands, and to revocations, restorations, *515 suspensions, amendments, and modifications of the proclamations and orders.
ACQUIRING FEDERAL OIL AND GAS LEASES-SOME PROBLEMS AND SUGGESTED SOLUTIONS, 9 RMMLF-INST 6 (1964) (footnotes omitted).
It is undisputed that Francis M. Henderson acquired his title from the United States of America and, as recognized by the majority herein, for "the next 131 years, this ownership, through chain of title, was uninterrupted." However, without notice to the successors of Francis M. Henderson, the United States Tract Book was altered in 1964, with a line drawn through the name of Francis M. Henderson and the inscription "Posted in Error" added. No document was attached to the United States Tract Book explaining the reason behind the error, nor was there any reference to any documentation providing authority for the tract book entry to be altered. One year later, the State of Louisiana applied for and received a patent deed from the United States. However, this patent was never recorded in Avoyelles Parish where the land in question is situated. The State applied for the patent despite the fact that the plaintiffs and their ancestors in title had paid the taxes on the property for decades and continued to do so until such time as the property was scheduled for Sheriff's Sale.
The trial court's reasons for judgment in favor of the plaintiffs do note, in part, the equitable doctrine of prescription, as shown in its oral reasons wherein the trial court expressed that the tract of land "drew revenue for the State of Louisiana in the form of taxes" while also mentioning the plaintiffs' "equitable title" and "good faith, present possession[.]" It is undisputed that the plaintiffs and their ancestors in title continuously possessed the property for decades, even prior to the State's purported acquisition of the property per the 1965 patent. Indeed, it is noted that had this been a case involving two individuals, instead of one individual versus the State, acquisitive prescription would be a direct issue and a prescriptive title could prevail. The State, on the other hand, asserts that "[p]rescription shall not run against the [S]tate in any civil matter, unless otherwise provided in this constitution or expressly by law", citing La.Const. art. 12, § 13. It then notes La.Const. art. 9, § 4, which provides, in part, that "Lands and mineral interests of the state ... shall not be lost by prescription" except in certain, narrow circumstances. However, it should be noted that plaintiffs' open possession of the property for at least 30 years, and certainly for 10 years, had long been accomplished prior to the State's attempted acquisition of the property in 1965. Thus, prescription did not "run against" the State; it had already tolled before the State's involvement with the land. What is most pertinent to this analysis is the silence of the State for the many, many years after acquiring the patent and its failing to provide any notice to the plaintiffs of its claim of adverse ownership of this property. Indeed, the acquisition itself, in light of the known fact that someone was claiming ownership of the property by the payment of taxes, makes the acquisition of the patent questionable without at least some effort to notify the taxpayers. Thus, under the circumstances of this particular case, the trial court had the authority to disregard the patent title asserted by the State.
The power of a court of equity, by its decree to vacate and annul the patent, under the circumstances of this case, is undoubted. Relief, when deeds or other instruments are executed by mistake or inadvertence of agents, as well as upon false suggestions, is a common head of equity jurisdiction.
*516 The patentee cannot complain of the proceeding, for the open, notorious, and exclusive possession of the premises, by the parties claiming under Goodbee, when the patentee made his entry and received the patent, was sufficient to put him upon inquiry as to the interests, legal or equitable, held by them; and if he neglected to make the inquiry, he is not entitled to any greater consideration than if he had made it and ascertained the actual facts of the case.
Hughes v. United States , 71 U.S. (4 Wall.) 232, 236, 18 L.Ed. 303 (1866) (emphasis added).
As such, I agree with the majority in the affirmation of the judgment of the trial court under the particular and limited facts of this unfortunate case.